UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARSHALL KRIMSKY<br><br>                 Plaintiff<br><br>  -against-<br><br>WESTROCK COMPANY and WESTROCK SERVICES, LLC<br><br>                 Defendant. | Case No.: 23-Civ-6252 (JPC)<br><br>**AMENDED COMPLAINT**<br><br>*Jury Trial Demanded* |

PLAINTIFF MARSHALL KRIMSKY ("Plaintiff"), by and through his attorneys Goddard Law PLLC, 39 Broadway, Suite 1540, New York, NY 10006, alleges upon knowledge with respect to himself, and upon information and belief as to all other matters, as follows:

### PRELIMINARY STATEMENT

1. For 22 years, Plaintiff was a highly successful salesperson for Defendant Westrock Company and Defendant Westrock Services, LLC (hereinafter collectively "Defendant Westrock") and its predecessors in interest, when Defendant Westrock reassigned him to a sales support role and drastically cut his income by about 70% to force him to retire. Defendant Westrock transferred Plaintiff – its most successful salesperson – from a position where he earned an average of $481,000 in commissions per year over the previous 10 years, to a job with a salary of $145,000. The salary is about $48,000 less than Plaintiff earned in his lowest earning year as a salesperson at Defendant Westrock.

2. Defendant Westrock claimed that it had to change Plaintiff's job and compensation structure because his division did not employ commissioned salespeople. This claim is patently ludicrous, as Plaintiff was employed as a commissioned salesperson by the division since 2019. Notwithstanding that, Defendant Westrock purported to change Plaintiff's compensation structure

just after Plaintiff secured a new contract with his biggest customer, worth $16.5 million or more to Defendant Westrock. More troubling still, Defendant Westrock thereafter assigned Plaintiff to perform the services for his biggest customer that he performed as a commissioned salesperson.

3. More recently, because it had to pay Plaintiff a modest bonus for incremental sales to his largest customer, Defendant Westrock reassigned Plaintiff's largest customer to a different representative and assigned Plaintiff to work with other customers. Finally, having been unsuccessful in its attempts to manipulate Plaintiff into retiring by slashing his income, Defendant Westrock is creating the pretext to terminate Plaintiff's employment by putting him on a Performance Improvement Plan ("PIP") and threatening termination.

4. Defendant Westrock has failed and refused to pay Plaintiff the commissions he earned since October 1, 2022, and has no intention of doing so. Defendant Westrock apparently believes that the change in his compensation structure as of October 1, 2022, absolves it from paying commissions under contracts signed before his compensation structure changed. Notwithstanding Defendant Westrock's misconception and violations of the New York Labor Law § 191, Defendant Westrock is obligated to pay Plaintiff the commissions he earned by virtue of securing a new contract with his biggest customer.

5. Further, Plaintiff asserts that Defendant Westrock changed his compensation structure because of his age (68 years old at the time), and because it regarded him as disabled, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 ("ADEA"); the Americans with Disabilities Act, 42 U.S.C. § 12101 ("ADA"), the New York State Human Rights Law, New York Executive Law § 296 ("NYSHRL"), and the New York City Human Rights Law, New York City Administrative Code § 8-101 ("NYCHRL").

## JURISDICTION AND VENUE

6.     Plaintiff filed this action New York Supreme Court for the County of New York. That court exercised personal jurisdiction over Defendant Westrock pursuant to CPLR §§ 301 and 302 because Plaintiff resides in New York County and Plaintiff worked for Plaintiff from his residence in New York County.

7.     This Court has subject matter jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1331 because the complaint raises questions of federal law. This Court has subject matter over the remaining causes of action due to supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

6.     Venue in this Court is proper pursuant 28 U.S.C. § 1446(a) because Defendant Westrock removed this matter from New York County Supreme Court, which is within this District.

7.     Venue is proper pursuant to CPLR § 503 as the events complained of herein occurred in New York County.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8.     Plaintiff filed a Charge of Discrimination against the Defendants with the U.S. Equal Employment Opportunity Commission ("EEOC") on June 16, 2023.

9.     On January 4, 2024, the EEOC issued a Dismissal and Notice of Rights letter, permitting Plaintiff to raise his ADEA and ADA discrimination claims in court.

10.    The ADEA and ADA discrimination claims are timely, as Plaintiff filed them fewer than 90 days after the EEOC issued its Dismissal and Notice of Rights letter.

## THE PARTIES

11.    Plaintiff was and is Defendant Westrock's "employee" within the meaning of applicable federal, state, and local laws, including ADEA, the ADA, New York Labor Law,

3

NYSHRL, and NYCHRL. Plaintiff works remotely for Defendant Westrock from his homes in New York City.

12. Defendant Westrock Company is a corporation organized under the laws of the state of Georgia with a principal place of business in Atlanta, Georgia.

13. Defendant Westrock Services, LLC is a corporation organized under the laws of the state of Georgia with a principal place of business in Atlanta, Georgia.

14. Defendant Westrock is Plaintiff's "employer" within the meaning of applicable federal, state, and local laws, including ADEA, the ADA, New York Labor Law, NYSHRL, and NYCHRL.

## FACTUAL BACKGROUND

### Plaintiff is Defendant Westrock's Most Successful Salesperson

15. Plaintiff has worked as a salesperson in the packaging industry since about 1979. In 2000, he joined Schiffenhaus Packaging, a predecessor-in-interest to Defendant WestRock.

16. In the late 90s, Plaintiff secured his first sale of display and packaging materials to Pepperidge Farm. Over the course of the next 25 years, Plaintiff's sales from Pepperidge Farm steadily increased, reaching $16.5 million per year in the fiscal year ending September 30, 2022.

17. As a salesperson, Plaintiff's income was solely commission-based. His commission on orders varied from 1% to more than 20% of the sale, depending on Defendant Westrock's profit margin on the order. From 2013 to 2022, Plaintiff's earnings averaged about $481,000 per year.

### Defendant Westrock Loses Plaintiff's Customers
### During Plaintiff's Medical Leave of Absence

18. In 2014, Plaintiff was diagnosed with Stage IV pancreatic cancer. He continued working while undergoing aggressive cancer treatments, and took a leave of absence of 1-2 months during 2015 to recover from his treatments.

4

19. Leading up to his leave of absence, Plaintiff's total sales were between $6 million and $8 million per year, half of which came from sales to Pepperidge Farm.

20. Defendant Westrock failed to properly service Plaintiff's smaller accounts during his medical leave. Accordingly, upon his return to work, Plaintiff discovered that most of his customers left Defendant Westrock to work with other packaging companies.

### Plaintiff Focuses on Increasing Pepperidge Farm Sales

21. At age 60, having narrowly survived treatment for Stage IV pancreatic cancer, Plaintiff had to rebuild his business to maintain his salary level. Rather than seeking new customers, Plaintiff focused his efforts on increasing the share of Pepperidge Farm business awarded to Defendant Westrock.

22. Plaintiff's strategy was a great success. He more than quadrupled Defendant Westrock's Pepperidge Farm sales from $3 million to $4 million per year in 2014, to $16.5 million in 2022. Moreover, in August 2022, Pepperidge Farm signed a contract with Defendant Westrock, which Plaintiff had been negotiating for nearly 2 years.

### Plaintiff Is Transferred to the Graphics Division

23. In 2019, Defendant Westrock underwent a reorganization and Plaintiff was assigned to the Graphics Division under manager Mark van der Kloet ("Manager Kloet"). Plaintiff expressed his concern to Manager Kloet about being the only commissioned salesperson in the Graphics Division, but Manager Kloet assured Plaintiff that he would "make [Plaintiff] whole."

24. Manager Kloet's lack of experience managing commissioned salespeople came to a head early on, as Plaintiff went without pay for more than a month. Apparently, neither Manager Kloet nor his assistant could figure out how Plaintiff's commissions worked. As a stop gap, Manager Kloet agreed to pay Plaintiff as he had been paid the previous year, and to "true up" his

5

commissions once he or his assistant created a spreadsheet to properly calculate Plaintiff's Commissions.

25. During the three years that Plaintiff worked as a commissioned salesperson in the Graphics Division, Defendant Westrock's sales from Pepperidge Farms increased by several million per year. Notwithstanding that, Manager Kloet never trued up Plaintiff's commissions, in violation of New York Labor Law § 191(1)(c).

### Plaintiff Secures Highly Profitable Contract With Pepperidge Farm, Yet is Demoted to a Sales Support Function

26. In August 2022, Plaintiff successfully completed a two-year long negotiation of a contract with Pepperidge Farm. If Pepperidge Farm sales remained steady, the contract was worth $16.5 million in sales for Defendant Westrock during fiscal year 2023. If Pepperidge Farm sales continued in its upward trajectory, the contract would be worth substantially more than that. This was an unqualified win for Defendant Westrock and Plaintiff. Upon information and belief, Pepperidge Farm bought about $16.5 million in packaging materials from Defendant Westrock during the Fiscal Year ending September 30, 2023 ("FY23").

27. Two weeks after Plaintiff secured the new Pepperidge Farm contract, Manager Kloet left Defendant Westrock and David Steele ("Manager Steele") became Plaintiff's manager.

28. On September 1, 2022, Manager Steele informed Plaintiff that, effective October 1, 2022, Plaintiff would no longer be a commissioned salesperson. Instead, Plaintiff would take on a sales support role at a salary of $145,000 per year, representing a pay cut of about $411,000 per year. His new title was "Graphics Business Manager," and he was to perform a sales support/customer service job.

**Plaintiff Is Set Up to Fail in Sales Support Function**

29. After more than 40 years as a salesperson, and at the age of 68, Defendant Westrock moved Plaintiff into a number-crunching, data entry, administrative job, for which he was untrained and had no interest. The new role, Business Unit Manager, required extensive use of computer systems with which Plaintiff was unfamiliar.

30. Defendant Westrock claimed that the move was necessary because the Graphics Division did not have commissioned salespeople, even though it plainly employed Plaintiff as a commissioned salesperson for three years.

31. Plaintiff appealed to Nickie Parker ("Manager Parker"), his one-above manager. Ignoring the blatant unfairness of a $411,000 per year pay cut after securing a highly profitable contract for Defendant Westrock, Manager Parker blithely commented, "I hope you saved enough money over the years."

32. Upon information and belief, Defendant Westrock apparently embraced age-related stereotypes, such as the belief that septuagenarians cannot learn new computer programs. Defendant Westrock reassigned Plaintiff to the administrative role to force him to retire, or to create conditions under which they could terminate his employment.

33. Critically, Defendant Westrock refuses to pay Plaintiff the commissions he earned under the new Pepperidge Farm contract, having reclassified Pepperidge Farm as a "house account" for which he would not receive a commission. Notwithstanding that, upon information and belief, someone at Defendant Westrock was paid a 2% commission on all Pepperidge Farm sales.

### Plaintiff Is Assigned to Support Defendant
### Westrock's Relationship with Pepperidge Farms

34. In March 2023, Manager Steele left Defendant Westrock and Tammie Siracusa ("Manager Siracusa") became Plaintiff's direct manager. She assigned Plaintiff to focus on maintaining Defendant Westrock's relationship with Pepperidge Farm, but without Defendant Westrock's paying the commissions Plaintiff earned by virtue of securing the new contract.

35. Upon information and belief, Defendant Westrock set upon its scheme to force Plaintiff to retire, or to terminate his employment, under the mistaken belief that it has no obligation to pay the commissions Plaintiff earned on the new Pepperidge Farm contract.

36. Upon further information and belief, Defendant Westrock's managers believe that by "saving" Westrock the expense of Plaintiff's commissions, they will be rewarded with substantial bonuses. Indeed, upon information and belief, someone at Defendant Westrock earned a 2% commission on all Pepperidge Farm sales in FY23, earning about $330,000 from Plaintiff's work selling packaging materials to Pepperidge Farm.

### Plaintiff Files Age and Disability Discrimination Charge With the EEOC

37. On June 16, 2023, Plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") alleging that Defendant Westrock discriminated against him on the basis of his age and perceived disability, and retaliated against him, when it changed his job from that of outside sales person to, essentially, customer service representative and reduced his income by 70% per year.

### Plaintiff Earns a Modest Bonus for FY23

38. On November 15, 2023, Defendant Westrock paid Plaintiff the modest bonus of $14,500 for his work selling packaging materials to Pepperidge Farm during FY23. This brings

his total compensation for FY23 up to $159,500, which is a decrease of about $396,000 from the previous fiscal year, when he was a commissioned salesperson.

### Plaintiff is Placed on a Retaliatory Performance Improvement Plan Following a Discriminatory Performance Evaluation

39. On January 16, 2024, Defendant Westrock assigned Plaintiff a retaliatory PIP. The PIP features impossible tasks, such as generating $10 million in new sales by September 30, 2024.

40. At or about the same time, Defendant Westrock presented Plaintiff's performance evaluation to him, rating his performance as "inconsistently meets expectations." Even though they radically changed the scope of his job and limited the types of contact he could have with Pepperidge Farm, Defendant Westrock blamed Plaintiff for its loss of substantially all of the Pepperidge Farm business for the fiscal year ending September 30, 2024.

41. In reality, Pepperidge Farm moved its packaging business to another supplier due to Defendant Westrock's ongoing quality control issues and the failure of the quality control department to address Pepperidge Farm's needs. Defendant Westrock blamed Plaintiff for the quality control department's failure to perform, claiming that "a key account plan and quarterly business reviews" would somehow make the quality control issues disappear.

42. Upon information and belief, Defendant Westrock changed Plaintiff's job from outside sales representative to Graphics Business Manager, and drastically cut his income, because he was over 65 and Defendant Westrock wanted him to retire. Moreover, as a cancer survivor, Defendant Westrock regarded Plaintiff as disabled and discriminated against him because they believed him to be unable to perform his job because it perceived him to be disabled.

43. Upon information and belief, Defendant Westrock set Plaintiff up for failure by changing his job to an administrative sales support role requiring extensive computer work, with which he had little experience or interest; instead of making sales calls: a practice in which he

excelled. Defendant Westrock's negative evaluation of Plaintiff's performance and the PIP are both retaliatory actions taken because Plaintiff reported age and disability discrimination to the EEOC.

### AS AND FOR A FIRST CAUSE OF ACTION
(ADEA Discrimination and Retaliation Because of Age)

44. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

45. Defendant discriminated against Plaintiff in violation of the ADEA by subjecting Plaintiff to adverse employment actions on the basis of his age. Defendant discriminated against Plaintiff by changing his job from outside salesperson earning $500,000-600,000 per year to Graphics Business Manager earning $145,000 per year. Defendant further discriminated against Plaintiff by repeatedly refusing to pay him the commissions he earned by virtue of securing a contract with Pepperidge Farm, negatively evaluating his performance, and instituting the PIP.

46. As a direct and proximate consequence of Defendant's discrimination herein alleged, Plaintiff has suffered, and continues to suffer, substantial damages, including but not limited to lost wages, benefits, and other economic loss, severe psychological, mental, physical and emotional distress, harm to earning capacity, disruption to personal life, and other compensable damages.

47. Defendant acted intentionally and with malice and/or reckless indifference to Plaintiff's legally protected rights, entitling Plaintiff to punitive damages.

48. By reason of Defendant's discrimination, Plaintiff is entitled to all remedies available for violations of federal law, including ADEA. Plaintiff shall seek attorney's fees and punitive damages.

### AS AND FOR A SECOND CAUSE OF ACTION
(Retaliation in Violation of ADEA)

49. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

50. Plaintiff was an employee of Defendant and is protected by ADEA from retaliation.

51. Plaintiff complained to the EEOC about the age discrimination to which he was subjected during his employment with Defendant.

52. Defendant, unlawfully and without cause, retaliated against Plaintiff as a direct result of Plaintiff's complaining about the incidents of age discrimination.

53. Because he protested Defendant's unlawful behavior, Plaintiff was subjected to retaliation. Specifically, Defendant retaliated against Plaintiff when it failed to pay Plaintiff the commissions he earned by virtue of securing a valuable contract with Pepperidge Farm, negatively evaluated his job performance, and instituted the PIP.

54. The retaliation substantially interfered with the employment of Plaintiff and created an intimidating, offensive, and hostile work environment in violation of ADEA. Defendant knew and should have known about the retaliation and the effect it had on Plaintiff's employment and failed to take any action to stop the retaliatory conduct.

55. As a direct and proximate result of said unlawful employment practices and disregard for Plaintiff's rights and sensibilities, Plaintiff has lost and will continue to lose substantial income including, but not limited to, wages and other benefits due him.

56. Additionally, Plaintiff has suffered the indignity of discrimination and retaliation, the invasion of his rights to be free from discrimination and great humiliation, which have manifested in serious emotional distress.

57. As a further direct and proximate result of said unlawful employment practices and retaliation, Plaintiff has suffered extreme mental anguish, outrage, severe anxiety about his future and his ability to support himself and his family, harm to his earning capacity, painful

embarrassment among his family, friends, and co-workers, damage to his good reputation, disruption of his personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

58. As a result of Defendants' violation of ADEA, Plaintiff has been damaged in an amount to be determined at trial.

## AS AND FOR A THIRD CAUSE OF ACTION
(Disability Discrimination in Violation of the ADA)

59. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

60. Defendant discriminated against Plaintiff in violation of the ADA by subjecting Plaintiff to adverse employment actions on the basis of his status as a person with a disability and/or perceived disability. Defendant discriminated against Plaintiff by changing his job from outside salesperson earning $500,000-600,000 per year to Graphics Business Manager earning $145,000 per year. Defendant further discriminated against Plaintiff by repeatedly refusing to pay him the commissions he earned by virtue of securing a contract with Pepperidge Farm, negatively evaluating his performance, and instituting the PIP.

61. As a direct and proximate consequence of Defendant's discrimination herein alleged, Plaintiff has suffered, and continues to suffer, substantial damages, including but not limited to lost wages, benefits, and other economic loss, severe psychological, mental, physical and emotional distress, harm to employability and earning capacity, disruption to personal life, and other compensable damages.

62. Defendant acted intentionally and with malice and/or reckless indifference to Plaintiff's legally protected rights, entitling Plaintiff to punitive damages.

63. By reason of Defendant's discrimination, Plaintiff is entitled to all remedies available for violations of federal law, including the ADA. Plaintiff shall seek attorney's fees and punitive damages.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Retaliation in Violation of the ADA)

64. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

65. Plaintiff was an employee of Defendant and is protected by the ADA from retaliation.

66. Plaintiff engaged in the protected activity of reporting to the EEOC that Defendant discriminated against him on the basis of his disability and/or perceived disability.

67. Defendant, unlawfully and without cause, retaliated against Plaintiff because he complained to the EEOC about disability discrimination. Specifically, Defendant retaliated against Plaintiff when it failed to pay Plaintiff the commissions he earned by virtue of securing a valuable contract with Pepperidge Farm, negatively evaluated his job performance, and instituted the PIP.

68. The retaliation substantially interfered with the employment of Plaintiff and created an intimidating, offensive, and hostile work environment in violation of the ADA. Defendant knew and should have known about the retaliation and the effect it had on Plaintiff, yet it failed to take any action to stop the retaliatory conduct.

69. As a direct and proximate result of said unlawful employment practices and disregard for Plaintiff's rights and sensibilities, Plaintiff has lost and will continue to lose substantial income including, but not limited to, wages and other benefits due him.

70. Additionally, Plaintiff has suffered the indignity of retaliation, the invasion of his rights to be free from discrimination, great humiliation, and physical assault, which have manifested in serious emotional distress.

71. As a further direct and proximate result of said unlawful employment practices and retaliation, Plaintiff has suffered extreme mental anguish, outrage, severe anxiety about his future and his ability to support himself and his family, harm to his earning capacity, painful

embarrassment among his family, friends, and co-workers, damage to his good reputation, disruption of his personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

72. As a result of Defendants' violation of the ADA, Plaintiff has been damaged in an amount to be determined at trial.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**(Age and Disability Discrimination in Violation of NYSHRL and NYCHRL)**

73. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

74. Defendant discriminated against Plaintiff in violation of the NYSHRL and NYCHRL by subjecting Plaintiff to adverse employment actions on the basis of his age and status as a person with a disability and/or perceived disability. Defendant discriminated against Plaintiff by changing his job from outside salesperson earning $500,000-600,000 per year to Graphics Business Manager earning $145,000 per year. Defendant further discriminated against Plaintiff by repeatedly refusing to pay him the commissions he earned by virtue of securing a contract with Pepperidge Farm, negatively evaluating his performance, and instituting the PIP.

75. As a direct and proximate consequence of Defendant's discrimination herein alleged, Plaintiff has suffered, and continues to suffer, substantial damages, including but not limited to lost wages, benefits, and other economic loss, severe psychological, mental, physical and emotional distress, harm to earning capacity, disruption to personal life, and other compensable damages.

76. Defendant acted intentionally and with malice and/or reckless indifference to Plaintiff's legally protected rights, entitling Plaintiff to punitive damages.

77. By reason of Defendant's discrimination, Plaintiff is entitled to all remedies available for violations of New York State and New York City laws, including the NYSHRL and NYCHRL. Plaintiff shall seek attorney's fees and punitive damages.

## AS AND FOR A SIXTHCAUSE OF ACTION
**(Retaliation for Engaging in Protected Activity in Violation of NYSHRL and NYCHRL)**

78. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

79. Plaintiff is an employee of Defendant and is protected by the NYSHRL and NYCHRL from retaliation.

80. Plaintiff engaged in the protected activity of reporting to the EEOC that Defendant discriminated against him on the basis of his age and disability and/or perceived disability.

81. Defendant, unlawfully and without cause, retaliated against Plaintiff because he complained to the EEOC about age and disability discrimination. Specifically, Defendant retaliated against Plaintiff when it failed to pay Plaintiff the commissions he earned by virtue of securing a valuable contract with Pepperidge Farm, negatively evaluated his job performance, and instituted the PIP.

82. The retaliation substantially interfered with the employment of Plaintiff and created an intimidating, offensive, and hostile work environment in violation of the NYSHRL and NYCHRL. Defendant knew and should have known about the retaliation and the effect it had on Plaintiff's employment, yet it failed to take any action to stop the retaliatory conduct.

83. As a direct and proximate result of said unlawful employment practices and disregard for Plaintiff's rights and sensibilities, Plaintiff has lost and will continue to lose substantial income including, but not limited to, wages and other benefits due him.

84. Additionally, Plaintiff has suffered the indignity of retaliation, the invasion of his rights to be free from discrimination, great humiliation, and physical assault, which have manifested in serious emotional distress.

85. As a further direct and proximate result of said unlawful employment practices and retaliation, Plaintiff has suffered extreme mental anguish, outrage, severe anxiety about his future

and his ability to support himself and his family, harm to his earning capacity, painful embarrassment among his family, friends, and co-workers, damage to his good reputation, disruption of his personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

86. As a result of Defendants' violation of the NYSHRL and NYCHRL, Plaintiff has been damaged in an amount to be determined at trial.

### AS AND FOR A SEVENTH CAUSE OF ACTION
**(Violation of New York Labor Law § 191(1)(c))**

87. Plaintiff repeats the foregoing allegations as if fully set forth herein.

88. By failing and refusing to pay Plaintiff his commission wages on a timely basis, Defendant Westrock violated and continues to violate New York Labor Law § 191(1)(c).

89. Despite repeated requests, Defendant Westrock failed and refused to provide Plaintiff with a written statement of earnings paid or due and unpaid.

90. As a result, Plaintiff suffered damages and seeks compensatory damages, liquidated damages, and attorneys' fees and costs.

### JURY DEMAND

91. Plaintiff demands a trial by jury.

### PRAYER FOR RELIEF

**WHEREFORE**, for the foregoing reasons, it is specifically requested that this Court grant Plaintiff judgment as follows:

i. On Plaintiff's First Cause of Action, awarding Plaintiff compensatory and other damages, including punitive damages in an amount to be determined at trial but in any case, no less than $2,000,000.00.

ii. On Plaintiff's Second Cause of Action, awarding Plaintiff compensatory and other damages, including punitive damages in an amount to be determined at trial but in any case, no less than $2,000,000.00.

iii. On Plaintiff's Third Cause of Action, awarding Plaintiff compensatory and other damages, including punitive damages in an amount to be determined at trial but in any case, no less than $2,000,000.00.

iv. On Plaintiff's Fourth Cause of Action, awarding Plaintiff compensatory and other damages, including punitive damages in an amount to be determined at trial but in any case, no less than $2,000,000.00.

v. On Plaintiff's Fifth Cause of Action, awarding Plaintiff compensatory and other damages, including punitive damages in an amount to be determined at trial but in any case, no less than $2,000,000.00.

vi. On Plaintiff's Sixth Cause of Action, awarding Plaintiff compensatory and other damages, including punitive damages in an amount to be determined at trial but in any case, no less than $2,000,000.00.

vii. On Plaintiff's Seventh Cause of Action, awarding Plaintiff compensatory and other damages, including punitive damages in an amount to be determined at trial but in any case, no less than $2,000,000.00.

viii.   Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees, together with such other and further relief as this Court deems equitable, proper, and just.

Dated: New York, New York
       December 10, 2024                    GODDARD LAW PLLC
                                            *Attorneys for Plaintiff*

                                    By:     /s/ Megan S. Goddard
                                            Megan S. Goddard
                                            Frances Codd Slusarz
                                            39 Broadway, Suite 1540
                                            New York, New York 10006
                                            (646) 964-1178
                                            Megan@goddardlawnyc.com
                                            Frances@goddardlawnyc.com