**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARSHALL KRIMSKY,<br>Plaintiff,<br><br>v.<br><br>WESTROCK COMPANY and WESTROCK<br>SERVICES, LLC,<br>Defendants. | Case No. 23-Civ-6252 |

<u>**WESTROCK'S BRIEF IN SUPPORT OF SUMMARY JUDGMENT**</u>

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     FACTS ................................................................................................................ 2

III.    PROCEDURAL BACKGROUND ...................................................................... 6

IV.     LEGAL STANDARD .......................................................................................... 7

V.      ARGUMENT ...................................................................................................... 8

    A.    Plaintiff's Age Claims Under the ADEA, New York State Law, and Local
        Law Fail ..................................................................................................... 8

        a.    Plaintiff's Age Discrimination Allegations Under the ADEA
            (Count I) and the NYSHRL (Count V) Lack Merit, and Summary
            Judgment Should Be Granted. ................................................... 8

        b.    Similarly, Plaintiff's Age Claims Under the New York City
            Human Rights Law (NYCHRL) Fail to Withstand Summary
            Judgment. .................................................................................. 14

    B.    Plaintiff's Regarded-As Disabled Discrimination Claims Are Baseless --
        Making Summary Judgment Necessary ................................................... 15

        a.    Plaintiff's Disability Discrimination Claims Under the ADA
            (Count III) and NYSHRL (Count V) Fail. ................................. 15

        b.    Plaintiff's Disability Discrimination Claim Under the NYCHRL
            (Count V) Also Fails. ............................................................... 18

    C.    Plaintiff's Retaliation Claims Also Fail. ................................................... 19

        a.    Plaintiff's Retaliation Claims Under the ADEA (Counts I and II),
            ADA (Count IV), NYSHRL (Count VI), and NYCHRL (Count VI)
            Also Fail. .................................................................................. 19

    D.    Plaintiff's Wage Claims Under NYLL 191(c) (Count VII) Fail. ......................... 20

VI.     CONCLUSION .................................................................................................. 21

LEGAL\76167540\1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adams v. Equinox Holdings, Inc.*,
  662 F.Supp.3d 444 (S.D.N.Y. 2023)........................................................................16

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)..............................................................................................8, 9

*Barber v. CSX Distribution Servs.*,
  68 F.3d 694 (3d Cir. 1995).......................................................................................20

*Bridge v. Phoenix Bond & Indemnity Co.*,
  553 U.S. 639 – 655, 128 S.Ct. 2131, 170 L.Ed.2d 1012 (2008).............................14

*Bucalo v. Shelter Island Union Free Sch. Dist.*,
  691 F.3d 119 (2d Cir. 2012).....................................................................................10

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)..............................................................................................8, 9

*Chuang v. T.W. Wang Inc.*,
  647 F.Supp.2d 221 (EDNY 2009) ...........................................................................14

*Dekarske v. Fed. Exp. Corp.*,
  294 F.R.D. 68 (E.D. Mich. 2013) .............................................................................10

*Ferraro v. New York City Dep't of Educ.*,
  404 F. Supp. 3d 691 (E.D.N.Y. 2017), aff'd, 752 F. Appx. .............................20, 21

*Giordano v. City of New York*,
  274 F.3d 740 (2d Cir. 2001).....................................................................................17

*Gross v. FBL Fin. Servs., Inc.*,
  557 U.S. 167, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009).........................................9

*Hilton v. Wright*,
  673 F.3d 120 (2d Cir. 2012).....................................................................................16

*Holcomb v. Iona Coll.*,
  521 F.3d 130 (2d Cir. 2008).....................................................................................13

*Kemp v. Metro–North R.R.*,
  316 Fed.Appx. 25 (2d Cir.2009)..............................................................................19

ii

*Kulak v. City of New York*,
88 F.3d 63 (2d Cir. 1996)..........................................................................................9

*Lively v. WAFRA Inv. Advisory Grp., Inc.*,
6 F.4th 293 (2d Cir. 2021) ........................................................................................10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)...................................................................................................8

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).......................................10, 13

*Moccio v. Cornell Univ.*,
889 F. Supp. 2d 539 (S.D.N.Y. 2012), *aff'd*, 526 F. Appx. 124 (2d Cir. 2013).......................21

*Ndremizara v. Swiss Re Am. Holding Corp.*,
93 F. Supp. 3d 301 (S.D.N.Y. 2015)...................................................................10, 15

*O'Connor v. Smith & Laquercia, LLP*,
2010 WL 3614898 (E.D.N.Y. Sept. 9, 2010) ..........................................................17

*Power v. Koss Const. Co., Inc.*,
499 F.Supp.2d 1194 (2007) .....................................................................................10

*Reichman v. City of New York*,
*179 A.D.3d 1115, 117 N.Y.S.3d 280 (2020)*...........................................................20

*Roberman v. Alamo Drafthouse Cinemas Holdings, LLC*,
67 Misc.3d 182 (2020) (N.Y. Sup. Ct. 2020) ..........................................................20

*Sacks v. Gandhi Eng'g, Inc.*,
999 F. Supp. 2d 629 (S.D.N.Y. 2014).........................................................17, 18, 19

*Saenger v. Montefiore Med. Ctr.*
706 F. Supp. 2d 494 (S.D.N.Y. 2010)......................................................................15

*Sgro v. Bloomberg L.P.*,
331 Fed. Appx. 932 (3d Cir. 2009)...........................................................................20

*Shi v. Batgatelle Int'l, Inc.*,
2023 WL 4187557 (S.D.N.Y. June 26, 2023) ..........................................................17

*Testa v. CareFusion*,
305 F. Supp. 3d 423 (E.D.N.Y. 2018) ........................................................................9

*Viola v. Philips Medical Systems of North America*,
42 F.3d 712 (2d Cir. 1994)........................................................................................15

iii

*Zuckerman v. GW Acquisition LLC*,
    No. 20 Civ. 8742 (VEC), 2021 WL 4267815 (S.D.N.Y. Sept. 20, 2021) ..............................22

**Statutes**

ADA ......................................................................................................................16, 17, 20, 22

Age Discrimination in Employment Act (ADEA) ............................................................ *passim*

N.Y. Lab. Law § 191(1)(c) .......................................................................................................22

New York City Human Rights Law (NYCHRL) .............................................................15, 19, 20

New York State Human Rights Law (NYSHRL) ............................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 56 .......................................................................................................................8

LEGAL\76167540\1

## I.      INTRODUCTION

Plaintiff Marshall Krimsky ("Plaintiff" or "Krimsky") was a sales representative for WestRock Services, LLC ("WestRock") until a reorganization resulted in mass layoffs for many. For him, it resulted in a transfer to the Graphics Solutions sales team headed by Mark van der Kloet. However, this team was not paid on a commission basis but a salary plus bonus basis. Plaintiff's compensation was eventually adjusted consistent with others on his team, and he entered into new compensation agreements related to his new salary structure. Plaintiff was and has been properly compensated pursuant to the clear and unequivocal terms of his employment. As a result, Plaintiff's claims have no merit, and summary judgment should be granted to WestRock.

This case primarily hinges on Plaintiff's baseless belief that his age and a decade-old cancer diagnosis were somehow linked to changes in his compensation, as well as his eventual discipline and termination years later. Additionally, he mistakenly believes he is entitled to a commission from a WestRock transaction with Pepperidge Farm, despite the fact that the uncontroverted facts show that no contract or policy entitles Plaintiff to any commission payment related to the Pepperidge Farm transaction. Therefore, his assertion that he deserves compensation, either by entitlement or fairness, for his past work on that account in a sales capacity is without merit.

Moreover, Plaintiff's claim of unlawful retaliation, stemming from his placement on a performance improvement plan and subsequent termination, is long on speculation and conclusory statements and woefully short on evidentiary support. The unchallenged evidence clearly shows that these actions were grounded in legitimate, non-discriminatory reasons, notably Plaintiff's documented poor performance, which he conceded during his deposition.

Discovery has concluded in this case, and Plaintiff is unable to create a genuine issue of material fact from the record to warrant a trial in this case. Consequently, the Court should grant summary judgment and dismiss the Complaint in its entirety.

1

## II.    FACTS

### *Plaintiff's Employment Background*

Plaintiff has worked as a salesperson in the packaging industry since about 1979. (Second Amended Complaint ("Complaint"), ECF No. 40, at ¶ 15.) In 2000, he joined Schiffenhaus Packaging, which later became part of Defendant WestRock. (Complaint ¶ 15.) Throughout his tenure, Plaintiff was employed at-will. (SOF ¶ 85.) As a salesperson prior to a reorganization in 2019, Plaintiff's income was solely commission-based. (Complaint, ¶ 17.)

### *Plaintiff's Health Issues About a Decade Ago*

According to Plaintiff, in 2014, Plaintiff was diagnosed with Stage IV pancreatic cancer and underwent cancer treatments, which resulted in a leave of absence in 2015 to recover from his treatments. (Complaint, ¶ 17.)

### *Company Reorganization*

In 2019, Defendant WestRock underwent a plant-wide reorganization, and Plaintiff was assigned to the Graphics Business Division under manager Mark van der Kloet. (Complaint, ¶ 23.) Mark van der Kloet is currently approximately 69 years old. (*See* SOF ¶ 61.) The reorganization was a result of a plant closure in Newark, New Jersey, which resulted in hundreds of people losing their jobs and a reorganization. (SOF ¶ 9.) At the start of Plaintiff's new assignment, Mark van der Kloet agreed to pay Plaintiff the same amount he had been paid the previous year until a new compensation plan could be resolved. (*See* Exhibit 2, WESTROCK 0254). This temporary agreement was in place until then Plaintiff could be moved to a new compensation plan. (SOF ¶ 11.)

### *Changes in Management*

In 2022, Nickie Parker assumed responsibility for the Graphics Business Division because Mark van der Kloet was retiring. (SOF ¶ 12.) Nickie Parker and Mark van der Kloet had a two to

three week overlap, during which time, he was able to pass along all of the "open items" to Nickie Parker as he was leaving, including Plaintiff's new compensation plan. (SOF ¶ 13.) Mark van der Kloet told Nickie Parker that he had told Plaintiff he would keep his compensation the same for a year, and then he would be moving Plaintiff to the Graphics Business Manager Compensation Plan. (SOF ¶ 14.) Mark van der Kloet advised Nickie Parker that he had not yet made that change over, but that Plaintiff was aware that a change was going to be made. (SOF ¶ 14.) Nickie Parker also moved Plaintiff into David Steel's group so that all sellers were part of one team. (SOF ¶ 15.) So on October 1, 2022 (which was the start of the company's new fiscal year), the Company moved Plaintiff into David Steel's team (note that the Company's sales team were all part of David Steel's team), and re-aligned Plaintiff's compensation consistent with the rest of the Graphics Business Managers. (SOF ¶ 15.) Nickie Parker thought it was important to move Plaintiff to David Steel's team to drive a consistent experience for WestRock's customers. (SOF ¶ 16.)

### *Plaintiff Compensation Is Re-Aligned*

On September 1, 2022, David Steel informed Plaintiff that, effective October 1, 2022, Plaintiff's compensation structure was changing. (SOF ¶ 17.) The change was necessary because the Graphics Division did not have commissioned salespeople. (SOF ¶ 18.) Plaintiff's compensation was re-aligned effective October 1, 2022. (SOF ¶ 19.) When Plaintiff's compensation structure was re-aligned, he received an acknowledgment of pay rate and a payday form, which he executed, acknowledging that his new salary would be $145,000 with a maximum bonus of $58,000. (SOF ¶ 20.) By signing these documents, Plaintiff understood he was agreeing to a re-aligned compensation and bonus plan, and that any prior bonus plans or compensation agreements were no longer active as a result. (SOF ¶ 21; *see* Compensation Plan Documents, Exhibit 4.) Further, Plaintiff's new compensation agreement explicitly stated, "I have read this sales compensation plan in its entirety and acknowledge that it will be the governing

documentation regarding all incentive earning for which I may be eligible in the Plan year…" (*See* Exhibit 5, WESTROCK 0267.) During his deposition, Plaintiff agreed that the Company has a right to change employees' compensation and that if a new sales plan is issued, it supersedes a prior sales plan. (SOF ¶ 24.) Simply put, there is no contract that would entitle Plaintiff to commissions or that would create a requirement to pay him a commission on Pepperidge Farm transactions. (SOF ¶ 25.)

### Issues with Plaintiff's Performance Are Noticed

From the time that Plaintiff joined the Graphics Division, David Steel immediately noticed issues with Plaintiff's performance and began documenting them. (SOF ¶ 26.)

### Pepperidge Farm Begins Voicing Quality Concerns Which Plaintiff Does Not Address Appropriately

Plaintiff was informed beginning in or about 2020 that Pepperidge Farm was unhappy with quality. (SOF ¶ 27.) However, Plaintiff did not make Nickie Parker or Tammy Siracusa (who began supervising him) aware of any such issues. (SOF ¶ 28.) Typically, if a Graphics Business Manager like Plaintiff, receives complaints of quality issues, they would visit the customer facility regularly to understand and see some of the issues firsthand. (SOF ¶ 29.) However, there is no record of Plaintiff visiting Pepperidge Farm's manufacturing facilities while being managed by Tammy Siracusa. (SOF ¶ 29.) Plaintiff failed to submit expense or business reports related to Pepperidge Farm in accordance with company policy. (SOF ¶ 31.)

### Pepperidge Farm Pulls Its Business

Pepperidge Farm closed its Connecticut office during the period July through December 2023, which is where Plaintiff's dealings with the customer were. (SOF ¶ 30.) After the closure, Plaintiff allegedly dealt with the customer mostly on the phone. (SOF ¶ 32.) Further, according to Plaintiff, many of the individuals Plaintiff dealt with at the customer left the company in this time

4

frame. (*Id.*) In April 2023, Plaintiff was informed by Pepperidge Farm that WestRock was losing ninety percent (90%) of its business due to quality issues. (SOF ¶ 33.) Eventually, WestRock lost all of Pepperidge Farm's business in April 2024. (SOF ¶ 34.)

***Plaintiff's Performance Issues Continue***

Plaintiff was identified as "Falling Below Expectations" or inconsistent on his 2023 Performance Evaluation. (Exhibit B, Plaintiff's Deposition 102:7-16.) Plaintiff did not generate new business as a graphics business manager. (SOF ¶ 35.) During his deposition, Plaintiff agreed that a Graphics Business Manager who is not building relationships with new customers and generating new business is not fulfilling the role of a graphics business manager. (SOF ¶ 37.) As part of Plaintiff's job, it was expected he would use Salesforce. (SOF ¶ 39.) Plaintiff did not use Salesforce.com, which is the company's CRM system, to track and grow opportunities, and did not provide any expense reports related to visiting customers. (SOF ¶¶ 40-41.)

Plaintiff's manager in 2023 and 2024, Tammy Siracusa, stated that her main concerns with Plaintiff's performance was his lack of effort to grow new business; the professionalism that he displayed with his customer and with meetings with her; his inability to use company tools such as Outlook, e-mail, calendar; and his inability to use the computer in general and use Salesforce.com—despite being trained on these systems. (SOF ¶¶ 43-45.) Plaintiff would come to meetings unprepared, as well as use inappropriate language when speaking with Tammy Siracusa and write unprofessional emails. (SOF ¶ 44.) Tammy Siracusa began considering terminating Plaintiff's employment in the summer of 2023 after she learned of the loss of virtually all of the Pepperidge Farm account. (SOF ¶ 46.) She had been talking to Plaintiff about growing new business, and he had not shown any activity around growing new business, as well as his unprofessionalism. (SOF ¶ 46.)

LEGAL\76167540\1

***Plaintiff is Placed On A Performance Improvement Plan***

Plaintiff was placed on a performance improvement plan ("PIP") on January 16, 2024, due to his failure to sufficiently perform his role and his apparent unwillingness to improve his performance after discussion, which he acknowledged on January 17, 2024. (SOF ¶¶ 47-48.) The initial PIP was for a 60-day period, but Plaintiff was granted a 30-day extension on April 26, 2024. (SOF ¶ 49; *see* Exhibit 7.) At his deposition, Plaintiff stated he understood that failure to meet the requirements of the PIP could result in termination of employment. (SOF ¶ 50.) Plaintiff failed to meet various requirements in his PIP and PIP extension document.  (SOF ¶¶ 50-51.)

***Plaintiff's Employment Is Terminated Due to Performance Issues***

Tammy Siracusa terminated Plaintiff's employment because he failed to complete the  PIP issued to him on January 16, 2024, and extended on April 26, 2024. (SOF ¶¶ 50-53.) Despite receiving an extension of the initial 60-day PIP period, Plaintiff failed to complete specific action items marked as incomplete in the PIP extension document dated April 26, 2024. (SOF ¶ 53.) Plaintiff's employment with WestRock was terminated on June 6, 2024, after which he has not actively sought new employment. (SOF ¶ 54.) Plaintiff's position has not been replaced. (SOF ¶ 55.) Plaintiff never raised any internal complaints of discrimination to the Company. (SOF ¶ 56.)

## III.    PROCEDURAL BACKGROUND

On June 16, 2023, Plaintiff filed the complaint in this action in state court, which was then removed to federal court on July 20, 2023. (ECF No. 1 and 1-1.) On June 16, 2023, Plaintiff also filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging that

WestRock discriminated against him on the basis of his age and perceived disability, and that WestRock retaliated against him.[1] (*See* Exhibit 8; SOF ¶ 58.)

## IV.     LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In general, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. This is consistent with Fed. R. Civ. P. 56. *Id.* at 248–49.

Once a movant has adequately supported its motion for summary judgment, the burden shifts to the nonmoving party to designate specific facts showing that there is a genuine issue for trial, as established in *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). This principle is further supported by *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986), which emphasizes that the nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts.

If the nonmoving party fails to set forth specific facts demonstrating a genuine issue for trial, summary judgment must be granted, as established in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). This principle is further supported by *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986), which emphasizes that the nonmoving party must present affirmative evidence to defeat a properly supported motion for summary judgment. Thus, "conclusory statements, conjecture, or speculation ... will not defeat summary judgment." *Testa v. CareFusion*, 305 F.

---

[1] The EEOC Charge states that the dates the discrimination allegedly took place were September 1, 2022, to continuing. (Exhibit 8, p. 2; SOF ¶ 58.)

Supp. 3d 423, 430 (E.D.N.Y. 2018), citing *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir.

1996).

## V.    ARGUMENT

### A.    Plaintiff's Age Claims Under the ADEA, New York State Law, and Local Law Fail

#### a.    *Plaintiff's Age Discrimination Allegations Under the ADEA (Count I) and the NYSHRL (Count V) Lack Merit, and Summary Judgment Should Be Granted.*

Plaintiff has failed to create a genuine issue of material fact from the current evidentiary

record for his age discrimination claim under the Age Discrimination in Employment Act (ADEA)

and New York State Human Rights Law (NYSHRL), and therefore summary judgment is

warranted.[2] To meet his burden on his age discrimination case, Plaintiff must prove that "age was

the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S.

167, 178, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009) (holding that under the ADEA a plaintiff cannot

establish disparate treatment by proving that age was simply a motivating factor in the adverse

decision). However, in the absence of direct evidence[3] of discrimination, such as here, Plaintiff's

age discrimination claims are analyzed under the three-step, burden-shifting framework

established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05,

93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

---

[2] Because Krimsky alleges retaliation under the ADEA under two separate counts (Count I and Count II), this claim will be addressed in the next section discussing Count II.

[3] Examples of direct evidence include explicit statements or written documents showing a discriminatory motive on their face, such as an employer telling an employee, "I fired you because you are disabled." *Dekarske v. Fed. Exp. Corp.*, 294 F.R.D. 68, 80 (E.D. Mich. 2013). Statements that are ambiguous or require inference do not qualify as direct evidence. *Power v. Koss Const. Co., Inc.,* 499 F.Supp.2d 1194 (2007). Additionally, for evidence to be considered direct, it must relate specifically to the employment decision in question and be made by someone involved in the decision-making process. *Dekarske v. Fed. Exp. Corp.,* 294 F.R.D. 68, 80 (E.D. Mich. 2013). Statements by non-decisionmakers or unrelated to the decisional process are insufficient. *Id.*

LEGAL\76167540\1

To establish a prima facie case under the ADEA, Plaintiff bears the initial burden of establishing a *prima facie* case: (1) that he was within the protected age group; (2) that he was qualified for the position; (3) that he experienced adverse employment action; and (4) that such action occurred under circumstances giving rise to an inference of discrimination. *Ndremizara v. Swiss Re Am. Holding Corp*., 93 F. Supp. 3d 301 (S.D.N.Y. 2015); *Lively v. WAFRA Inv. Advisory Grp., Inc.,* 6 F.4th 293, 303 (2d Cir. 2021), quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012) (internal quotation marks omitted). Plaintiff's claims fail at this stage because he was not qualified for the position (as evidenced by his inability to meet the functions of his position, which he admitted to during his deposition and led to his termination of employment), and because Plaintiff cannot show that any action occurred under circumstances giving rise to an inference of discrimination.

Specifically, Plaintiff alleges WestRock discriminated against him due to age when 1) it changed his role and changed his compensation plan, 2) it did not pay him commissions related to Pepperidge Farm, 3) his performance was negatively evaluated, and 4) he was placed on a Performance Improvement Plan. Each allegation is addressed in turn, below:

As to the change in his role to Graphics Business Manager and eventual compensation plan, it is undisputed that Westrock underwent a company-wide reorganization in 2019. (SOF ¶ 8.) At the time, a reorganization was necessary because WestRock closed its Newark plant (Plaintiff's work location) for financial reasons, and as a result, more than 300 employees lost their jobs. (*see* SOF ¶ 9.) Plaintiff was *spared* from termination in that mass layoff and was transferred to the Graphics Solutions sales team headed by Mark van der Kloet, VP, Graphics Solutions, who

LEGAL\76167540\1

volunteered to take Plaintiff onto his team. (SOF ¶ 8.) Notably, Mark van der Kloet is also in the protected class and is currently approximately 69 years old. (SOF ¶ 61.)

Here, the Company went out of its way to give Plaintiff time to adjust to that impending change when Mark van der Kloet told Plaintiff that his previous commission-based compensation *amount* would remain the same temporarily but that it would ultimately be adjusted. (SOF ¶ __.) Indeed, it would be illogical to suggest that the Company had any sort of discriminatory animus against Plaintiff when it found a way to *keep him* with the Company during this restructure (when hundreds were fired), and when it found a way to continue paying him over half a million dollars a year for a period of time until a new plan could be resolved so he had time to adjust (rather than change his compensation immediately). Plaintiff cannot create any issue of material fact from the record related to him newly reporting to Mark van der Kloet or that he was kept on a temporary salary until a new plan was put in place.[4]

Plaintiff's compensation was ultimately re-aligned with other Graphics Business Managers in 2022 when Nickie Parker,[5] who replaced Mark van der Kloet upon his retirement, took over the team. (SOF ¶ 12.) After discovering that Mark van der Kloet did not adjust Plaintiff's compensation before he retired, Nickie Parker discussed the compensation adjustment with Plaintiff before implementing it. (SOF ¶¶ 12-18.) This is because Ms. Parker sought to actively change all commercial compensation plans across the entire corrugated segment and sought to maintain consistent compensation plans – moving away from any individual plans, such as

---

[4] Even if Plaintiff could create an issue of fact on this point, which he cannot, this point is ultimately not a material fact.

[5] Ms. Parker is also in the protected class and is currently approximately 51 years old. (*See* SOF ¶ 61.)

Krimsky's—all of which is supported by documentary evidence in this matter that cannot be refuted by Plaintiff. (SOF ¶¶ 16.)

Ms. Parker explained to Plaintiff in September 2022 that his re-aligned salary would be $145,000 beginning on October 1, 2022, with a maximum incentive payout (bonus) amount of $58,000 for fiscal year 2023—for a total of $203,000. (SOF ¶ 20.) In follow-up to their compensation discussion on September 20, 2022, Plaintiff received written notice of his salary re-adjustment as well as the Graphics Business Manager Bonus Plan, documents Plaintiff accepted and executed. (SOF ¶ 20; *see* Exhibit 4, Compensation Documents signed by Plaintiff.) By signing these documents, Plaintiff understood he was agreeing to a new base compensation and new bonus plan, and that any prior bonus plans or compensation agreements were no longer active as a result. (SOF ¶ 21.) Indeed, Plaintiff's new compensation agreement explicitly stated, "I have read this sales compensation plan in its entirety and acknowledge that it will be the governing documentation regarding all incentive earning for which I may be eligible in the Plan year…" (SOF ¶ 22.) There is absolutely nothing in the record that would entitle Plaintiff to continued half-a-million-dollars a year in compensation. And Plaintiff does not dispute this fact. Thus, Plaintiff cannot create any issue of material fact related to his realignment in compensation (or that he was allegedly entitled to a Pepperidge Farm commission).

As to his performance evaluation and placement on a PIP, there is again nothing in the record to suggest that any of these had anything to do with Plaintiff's age. Tammy Siracusa is the one who last evaluated Plaintiff's performance and is the one who made the decision to place Plaintiff on a PIP and ultimately terminate his employment. Notably, at his deposition, Plaintiff *did not identify Tammy Siracusa* as one of the individuals who allegedly discriminated against him based on age (he explicitly identified others but not Tammy). (SOF ¶ __.) Further, Tammy Siracusa

was not aware of Plaintiff's age. (*see* SOF ¶ 61.) Simply put, there is no evidence of any discriminatory animus related to age, which means that Plaintiff cannot create an issue of material fact.

Assuming Plaintiff can establish a *prima facie* case of age discrimination, which he cannot, the burden shifts to WestRock to articulate "some legitimate, nondiscriminatory reason" for the adverse action, *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817, which Plaintiff in turn must then rebut by showing that "the employer's determination was in fact the result of [] discrimination." *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008). WestRock has articulated the legitimate nondiscriminatory reasons for its decisions. Here, the record is clear that Plaintiff's role changed because of a company restructure due to closure of the plant he serviced, and that he was on a temporary individualized plan after that restructure, which was resolved when he was brought into alignment with his peers because the company did not want to maintain separate, inconsistent compensation plans between and among individuals in the same group.

These are legitimate nondiscriminatory reasons for Plaintiff's role and compensation change, and Plaintiff cannot demonstrate by any *evidence* in the record that WestRock's legitimate rationale was false *and* that Plaintiff's age was instead the "but for" reason for the actions. Further, there have not been comments related to age or anything else that would suggest an animus, and Plaintiff has not been replaced. Instead, the record shows that there were legitimate nondiscriminatory reasons for the evaluation of Plaintiff's performance and placement on a PIP. The record is clear that Tammy Siracusa negatively evaluated his performance because Plaintiff was not meeting the basic functions of his role or minimum expectations – such as entry of sales data into Salesforce. (SOF ¶¶ 39-40.) It is also clear from the undisputed evidence that Plaintiff failed to meet the requirements of a PIP (even after an extension) – resulting in termination. (SOF

¶¶ 35-46.) Plaintiff cannot create a genuine issue of material fact to dispute these reasons. Discovery has closed, and there is no evidence that age had anything to do with any decisions related to Plaintiff. Plaintiff has nothing to suggest that age was a factor. In fact, when specifically asked why he believed age was a factor in any employment decision, Plaintiff conceded (and has not disputed) that he had no specific facts to support that his change in compensation was due to age. (*see* SOF ¶ 64.) Further, Plaintiff conceded that no one at the company has ever said a statement or done anything to suggest that Plaintiff's age was part of any decision related to his employment. (SOF ¶ 64.) Simply put, the parties have engaged in the extensive exchange of discovery, including the production of documents and interrogatory responses, as well as depositions, and there is absolutely nothing in the record that even remotely supports that Plaintiff's age had anything to do with any decisions related to his employment nor can he meet the high burden of establishing that his age was the "but-for" cause of the alleged adverse decision. *See Bridge v. Phoenix Bond & Indemnity Co.,* 553 U.S. 639, 652 – 655, 128 S.Ct. 2131, 2141– 2142, 170 L.Ed.2d 1012 (2008) (recognizing that the phrase, "by reason of," requires at least a showing of "but for" causation (internal quotation marks omitted).

Plaintiff's state-law age claims fail for the same reason as under the ADEA. *Chuang v. T.W. Wang Inc.,* 647 F.Supp.2d 221 (EDNY 2009). This is because age discrimination claims under the New York State Human Rights Law (NYSHRL) are analyzed identically to claims under the ADEA. *Ndremizara v. Swiss Re Am. Holding Corp.,* 93 F. Supp. 3d 301 (S.D.N.Y. 2015) Thus, if it fails for one, it fails for the other. Although analyzed identically, there is a slight difference regarding the burden of proof under the ADEA and under NYSHRL, which is that New York law does not apply the "but for" causation standard but a "motivating factor" standard. However, it is

clear based on the foregoing that there is not a single drop of evidence that would support that age had anything to do with any employment decisions related to Plaintiff.

Accordingly, summary judgment on Plaintiff's age discrimination claims under the ADEA and NYSHRL is appropriate because Plaintiff cannot create any issue of material fact to substantiate his claims of age discrimination or effectively challenge WestRock's stated reasons for his change in compensation, his discipline, or his termination of employment. *See Saenger v. Montefiore Med. Ctr.* 706 F. Supp. 2d 494, 508 (S.D.N.Y. 2010) (granting summary judgment because the plaintiff failed to provide sufficient evidence for a rational trier of fact to disbelieve the defendant's legitimate, nondiscriminatory explanation for its action); *and Viola v. Philips Medical Systems of North America,* 42 F.3d 712 (2d Cir. 1994) (granting summary judgment in favor of the employer because the plaintiff failed to offer any evidence that age was a factor in his discharge and thus did not raise a genuine issue of material fact as to whether the employer's decision was discriminatory).

Accordingly, granting summary judgment on Counts I and V emerges as the only appropriate course.

> ### b. *Similarly, Plaintiff's Age Claims Under the New York City Human Rights Law (NYCHRL) Fail to Withstand Summary Judgment.*

Although claims brought under the NYCHRL are analyzed under a less stringent standard, Plaintiff's claims under the NYCHRL *still* fail based on the current evidentiary record. To establish a *prima facie* case of age discrimination under the NYCHRL, Plaintiff must show that he was treated "less well" *at least in part* for a discriminatory reason. *Adams v. Equinox Holdings, Inc.*, 662 F.Supp.3d 444 (S.D.N.Y. 2023) (emphasis added). Here, as explained above, Plaintiff cannot point to *a single piece of evidence* in support of his age claims. There is nothing that Plaintiff can rely on to show that he was treated "less well" at least in part due to his age. Indeed, as noted

above, Plaintiff himself admitted during his deposition that he has no specific facts to support that

his change in compensation was due to age and that no one at the company has ever said a statement

or done anything to suggest that Plaintiff's age was part of any decision related to his employment.

(SOF ¶¶ 63-64.) Further, Plaintiff cannot show that any of the reasons for his job change during

the restructuring, his performance evaluations, or his placement on a PIP are pretextual. Thus, like

in *Rimpel v. AdvantageCare Physicians, P.C.*, "because Plaintiff cannot establish a genuine issue

of material fact as to whether Defendant's justifications for his [adverse employment action] are

pre-textual, he also cannot establish by a preponderance of the evidence that age discrimination

motivated the [adverse employment action]." 486 F. Supp. 3d 625, 639 (E.D.N.Y. 2020).

B.    **Plaintiff's Regarded-As Disabled Discrimination Claims Are Baseless -- Making Summary Judgment Necessary.**

a.    ***Plaintiff's Disability Discrimination Claims Under the ADA (Count III) and NYSHRL (Count V) Fail.***

Plaintiff's disability discrimination claims under the ADA (Count III) and NYSHRL

(Count V) fail. This is because Plaintiff cannot create a genuine issue of material fact from the

existing evidentiary record to establish his claim that someone must have "regarded" him as

disabled.

As an initial matter, "even if Plaintiff is not disabled, he is still afforded the protections of

the ADA, insofar as he demonstrates that [his employer] perceives him to be disabled and

discriminated against him on that false belief." *See Hilton v. Wright,* 673 F.3d 120, 128–30 (2d

Cir. 2012). Plaintiff invokes protections under the ADA because he alleges that he was "perceived

to be disabled."

To establish a *prima facie* case of disparate treatment under the ADA, Plaintiff must

demonstrate that: (1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded

as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform

15

the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of his disability or perceived disability. *Sacks v. Gandhi Eng'g, Inc.,* 999 F. Supp. 2d 629 (S.D.N.Y. 2014). When a plaintiff brings a claim on the basis that his employer regarded him as disabled, "the decisive issue is the employer's perception of his or her employee's alleged impairment." *Giordano v. City of New York,* 274 F.3d 740, 748 (2d Cir. 2001). There must be evidence in the record still showing "invidious discriminatory intent" to support a "perceived disability" claim, and there is nothing in the record to demonstrate such intent. *O'Connor v. Smith & Laquercia, LLP,* 2010 WL 3614898 (E.D.N.Y. Sept. 9, 2010); *see also Shi v. Batgatelle Int'l, Inc.,* 2023 WL 4187557, *8 (S.D.N.Y. June 26, 2023) ("Conjecture is not enough" to resist summary judgment on a claim of perceived disability discrimination; rather "[t]o establish discrimination based on perceived disability, a plaintiff must *show* that his employer perceived him as having a disability.").

Here, Plaintiff's claims fail for two reasons – decisively, because he has failed to establish that he was regarded as disabled and second, because he did not suffer an adverse employment action *because* of his perceived disability. In his Second Amended Complaint, Plaintiff states that because he was perceived as disabled, his compensation structure was changed. (See Exhibit A, ECF No. 40, ¶ 5.) And at his deposition, Plaintiff named Peter Brandt, David Steel, Mark van der Kloet and Nickie Parker as the individuals who allegedly discriminated against him based on perceived disability. (SOF ¶ 61.)

As an initial matter, Nickie Parker was not aware that Plaintiff had pancreatic cancer in 2014, so she could not have possibly regarded Plaintiff as disabled (as alleged). (SOF ¶ 81.) And notably, Plaintiff agreed that at no point was disability status ever mentioned by David Steel, Mark van der Kloet, or Nickie Parker—the remaining individuals he makes these allegations against in

his Second Amended Complaint. (SOF ¶¶ 72, 77-78.) However, Plaintiff explained at his deposition that the sole basis for Plaintiff's disability claim is that Peter Brandt allegedly sent him for a drug test when he returned from cancer treatment in 2014, which he failed, and that the only reason he included Mark van der Kloet was due to an alleged phone call wherein Mark van der Kloet asked Plaintiff how he was doing after cancer treatment. (SOF ¶¶ 74; 75.) Additionally, Plaintiff also admitted that Peter Brandt had a disability – which would place him in the same protected class as Plaintiff for this claim. (SOF ¶ 71.) However, even if these individuals believed that Plaintiff was disabled due to a cancer diagnosis from 2014, ultimately, these allegations are far outside of the statute of limitations – dating almost a decade ago. Further, to the extent that these allegations were inside the statute of limitations, these remarks have nothing to do with age. Simply put, there is nothing that would suggest that a cancer diagnosis in 2014 had anything to do with decisions being made in 2019 or later – negating any sort of causality.

Plaintiff has failed to establish that WestRock took an adverse action *because* of an actual or perceived impairment. Ultimately, Plaintiff must demonstrate that the employer's perception of the disability was a *substantial factor* in the adverse employment action. This can be shown through evidence such as employer statements, actions, or policies that indicate a belief that the employee was impaired. *Sacks v. Gandhi Eng'g, Inc.,* 999 F. Supp. 2d 629, 643 (S.D.N.Y. 2014). However, Plaintiff cannot do so. The allegation that perceived disability had anything to do with Plaintiff's job transfer is not based in fact, as conceded by Plaintiff. (SOF ¶ 82.) There is nothing in the record that would support any disability discrimination claim. Moreover,  Plaintiff's testimony itself undercuts the viability of any disability discrimination claim. Plaintiff could not connect any timely alleged adverse action to his cancer diagnosis and treatment a decade ago, and

LEGAL\76167540\1

Plaintiff conceded that no words were ever used that would suggest that Plaintiff's alleged disability had anything to do with his change in compensation. (SOF ¶ 73.)

If Plaintiff can meet the *prima facie* burden, which he cannot, WestRock must then "proffer a legitimate, non-discriminatory reason for the complained of action." *Sacks v. Gandhi Eng'g, Inc.*, 999 F. Supp. 2d 629, 633–34 (S.D.N.Y. 2014) (internal citation omitted). If it does, "[t]his rebuts the presumption raised by the *prima facie* case, at which point 'the burden shifts back to the plaintiff to prove, by a preponderance of the evidence, that the real reason for the adverse employment decision was discrimination.' " *Kemp v. Metro–North R.R.,* 316 Fed.Appx. 25, 27 (2d Cir.2009) (citation omitted). In other words, Plaintiff must show pretext. Here, WestRock has offered legitimate nondiscriminatory reasons for all actions related to Plaintiff, as described above, and Plaintiff cannot point to a single issue of disputed material fact otherwise. Further, Plaintiff is unable to show pretext.

As such, the claims (Count III and Count V) are utterly insufficient and thus, summary judgment should be granted on these claims.

> **b.    Plaintiff's Disability Discrimination Claim Under the NYCHRL (Count V) Also Fails.**

To establish a *prima facie* case of disability discrimination under the NYCHRL, Plaintiff must demonstrate that he is a member of a protected class (which includes those perceived as disabled), that WestRock refused, withheld, or denied an accommodation, advantage, facility, or privilege based on Plaintiff's membership in the protected group, and that Defendant's actions give rise to an inference of discrimination. *Roberman v. Alamo Drafthouse Cinemas Holdings, LLC*, 67 Misc.3d 182 (2020) (N.Y. Sup. Ct. 2020). As explained above, Plaintiff has failed to create a genuine issue of material fact related to the alleged perception that he was disabled, or to show that WestRock's actions gave rise to an inference of discrimination. Indeed, Plaintiff has conceded

that *at no point* was disability status ever mentioned by David Steel, Mark van der Kloet, or Nickie Parker, and no words were ever used that would suggest that Plaintiff's alleged disability had anything to do with his change in compensation or any other decision related to his employment. (SOF ¶¶ 72, 73.)

### C.    Plaintiff's Retaliation Claims Also Fail.

#### a.    Plaintiff's Retaliation Claims Under the ADEA (Counts I and II), ADA (Count IV), NYSHRL (Count VI), and NYCHRL (Count VI) Also Fail.

To establish a *prima facie* case of retaliation under the ADEA, ADA, and NYSHRL,[6] Plaintiff must demonstrate that he 1) engaged in protected activity; 2) that he was subject to an adverse employment action by the employer either subsequent to or contemporaneous with the protected activity; and 3) a causal connection between the protected activity and the adverse employment action. *Sgro v. Bloomberg L.P.*, 331 Fed. Appx. 932 (3d Cir. 2009); *Barber v. CSX Distribution Servs.*, 68 F.3d 694, 701 (3d Cir. 1995).

Plaintiff claims that WestRock's negative evaluation of Plaintiff's performance and the PIP are both retaliatory actions taken because Plaintiff reported age and disability discrimination to the EEOC. However, Plaintiff cannot establish a causal connection between filing an EEOC Charge and his negative performance evaluation and placement on a PIP. Here, Plaintiff began to experience performance issues under David Steel in 2022. (SOF ¶ 26; *see* Exhibit 3-a.) This predates the filing of the EEOC Charge. Further, because Plaintiff cannot point to any documents

---

[6] As with Plaintiff's discrimination claims, claims of retaliation under the ADA and NYSHRL are examined under the McDonnell Douglas burden shifting paradigm. *Ferraro v. New York City Dep't of Educ.*, 404 F. Supp. 3d 691, 715 (E.D.N.Y. 2017), aff'd, 752 F. Appx.a 70 (2d Cir. 2018). The NYCHRL is analyzed similarly, with the difference in analysis being immaterial here. *See Reichman v. City of New York, 179 A.D.3d 1115, 1119, 117 N.Y.S.3d 280, 286 (2020) (*explaining that the NYCHRL offers broader protection in requiring only that the employer's conduct was reasonably likely to deter a person from engaging in protected activity, rather than proving a materially adverse employment action). This is not a point of contention for purposes of this motion.

or words to suggest that his performance documents or PIP were somehow caused by an improper motive, the only thing left to analyze is temporal proximity. However, the time period between when he filed his EEOC Charge (June 16, 2023) and when he was placed on a PIP (January 2024) is a difference of seven (7) months—a time period that is too attenuated to suggest they are related, since "courts in this Circuit have consistently held that a passage of more than two (2) months between the protected activity and the adverse employment action does not allow for an inference of causation." *Moccio v. Cornell Univ.,* 889 F. Supp. 2d 539, 587 (S.D.N.Y. 2012), *aff'd,* 526 F. Appx. 124 (2d Cir. 2013).

Once a prima *facie case* is established, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action. Here, even though Plaintiff has not established a *prima facie* case, assuming he did, his claims still fail because WestRock has fully articulated the reasons for his placement on a PIP and the preceding performance documents. Since WestRock has provided these reasons, the burden shifts back to the Plaintiff to demonstrate that the employer's reason is a pretext for retaliation. *Ferraro v. New York City Dep't of Educ.*, 404 F. Supp. 3d 691, 715 (E.D.N.Y. 2017), aff'd, 752 F. Appx. 70 (2d Cir. 2018).

However, as is clear from the record, Plaintiff fails to adduce sufficient facts to demonstrate that WestRock's reasons for any employment decisions were pretextual. As a result, summary judgment should be granted in favor of WestRock on Plaintiff's retaliation claims under the ADEA, ADA, and NYSHRL.

### D.    Plaintiff's Wage Claims Under NYLL 191(c) (Count VII) Fail.

Plaintiff is unable to establish a claim under NYLL 191(c) because he cannot point to a single document that would entitle him to the commission he believes he should have been given. To bring a Section 191(1)(c) claim for unpaid commissions, Plaintiff must establish that such commissions were " 'earned ... in accordance with the agreed terms of the employment.' "

*Zuckerman v. GW Acquisition LLC*, No. 20 Civ. 8742 (VEC), 2021 WL 4267815, at*15 (S.D.N.Y.

Sept. 20, 2021) (quoting N.Y. Lab. Law § 191(1)(c)). Here, Plaintiff has not shown *a single defined*

*obligation* under any agreement that WestRock has allegedly breached. Instead, to the contrary,

discovery has shown that Plaintiff was not entitled to a commission on Pepperidge Farm because

he was on a re-aligned compensation plan which he accepted and executed. This agreement

governed his compensation beginning October 1, 2022, and it very clearly outlined what base

salary and bonus he would be entitled to. (*see* Exhibit 4.) Further, Plaintiff himself testified that he

has no written agreement he can point to that entitles him to continue his previous arrangement

(which again, paid him the same dollar amount but was not actually commissions). (SOF ¶¶ 21-

25.)

　　　　Thus, Plaintiff cannot point to any aspect of any agreement that was breached. To the

contrary, WestRock complied with all applicable agreements between Plaintiff and it, and it is

clear from the agreement's express terms that Plaintiff was not entitled to commissions on the

Pepperidge Farm account. Further, Plaintiff himself agreed that he was an employee at will and

that the company was free to change his compensation. (SOF ¶¶ 21-25; 85.) Thus, no factfinder

could find by a preponderance of the evidence that WestRock breached any commission agreement

with Plaintiff. Plaintiff has been unable to establish any evidence of a failure on the part of

WestRock to perform any contractual obligation related to commissions. Accordingly, WestRock

requests summary judgment in its favor for Plaintiff's N.Y.L.L. 191 (c) claim.

## VI.    CONCLUSION

　　　　Plaintiff simply cannot point to evidence sufficient to demonstrate that a reasonable jury

could find in his favor with respect to any of his claims. Plaintiff simply has failed to adduce

evidence to support his claims. Instead, the record reveals that every business decision upon which

Plaintiff appears to rely for his claims was based on a legitimate, nondiscriminatory and

nonretaliatory reason. Plaintiff cannot offer facts to support his claims or challenge WestRock's decisions as being unlawful, and Plaintiff cannot point to any evidence showing that any actions were motivated by a desire to retaliate against him for asserting a federal claim and EEOC charge against WestRock or that that the legitimate reasons outlined for the actions taken are a fabrication. Simply believing that a change in his salary was unfair is not sufficient to sustain Plaintiff's claims. Lastly, Plaintiff cannot point to any contract or agreement that would entitle him to commissions related to Pepperidge Farm.

As a result, summary judgment should be granted in WestRock's favor for all counts.

DATED: February 7, 2025

Respectfully submitted,

COZEN O'CONNOR

*s/ Janice Sued Agresti*
Janice Sued Agresti
3 WTC, 175 Greenwich Street, 55th Floor
New York, NY 10007
P: 212-453-3978
F: 646-588-1558
jagresti@cozen.com

## <u>WORD COUNT CERTIFICATION</u>

This document (inclusive of certifications) has 7,110 words (without inclusion of the table of contents and table of authorities). Thus, I hereby certify that this document complies with the word-count limitations.

<u>*s/ Janice Sued Agresti*</u>
Janice Sued Agresti

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 7, 2025, I caused a copy of the foregoing Motion for Summary Judgment to be filed via the Court's electronic filing system. The Court's electronic filing system makes this filing available to all parties for viewing and downloading.

*<u>s/ Janice Sued Agresti</u>*
Janice Sued Agresti
