# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARSHALL KRIMSKY,<br><br>Plaintiff,<br><br>v.<br><br>WESTROCK COMPANY and WESTROCK SERVICES, LLC,<br><br>Defendants. | Case No. 23-Civ-6252 |

## ALL STATEMENT OF FACTS[1]

### *Plaintiff's Employment Background*

1.      Plaintiff has worked as a salesperson in the packaging industry since about 1979. (Second Amended Complaint, ECF No. 40, ¶ 15.)

**Undisputed.**

2.      In 2000, he joined Schiffenhaus Packaging, which later became part of WestRock ("WestRock"). (Second Amended Complaint, ECF No. 40, ¶ 15.)

**Undisputed.**

3.      Throughout his tenure, Plaintiff was employed at-will. (Plaintiff's Deposition, attached to the Janice Sued Agresti's Declaration as **Exhibit 1**, 14:15-22.)

**Undisputed.**

### *Plaintiff's Compensation Structure Prior to Reorganization*

---

[1] For viewing ease, WestRock is filing three distinct but related Statement of Facts: 1) All Statement of Facts (beginning on **Page 1**) that includes both undisputed and disputed facts and are marked accordingly; and per the Court's Individual Rules: 2) A Joint Statement of *Undisputed* Facts (beginning on **Page 17**); and a 3) Statement of Additional Facts Not contained in the Joint Statement of Undisputed Facts (beginning on **Page 29**.) Note that all three documents use the same numbering convention for each identical fact (in other words, for example, Paragraph 17 in one document, remains Paragraph 17 in the other documents, if applicable).

LEGAL\76167642\1

4.      As a salesperson prior to a reorganization in 2019, Plaintiff's income was solely commission-based. (Second Amended Complaint, ECF No. 40, ¶ 17.)

**Undisputed.**

---

***Plaintiff's Health Issues About a Decade Ago***

5.      According to Plaintiff, in 2014, Plaintiff was diagnosed with Stage IV pancreatic cancer. (Second Amended Complaint, ECF No. 40, ¶ 17.)

**Undisputed.**

6.       According to Plaintiff, Plaintiff underwent cancer treatments and took a leave of absence in 2015 to recover from his treatments. (Second Amended Complaint, ECF No. 40, ¶ 17.)

**Undisputed.**

7.      Plaintiff believes that his accounts were not serviced in 2014 due to his cancer diagnosis. (**Exhibit 1**, Plaintiff's Deposition, 27:19-28:19.)

**Undisputed.**

---

***Company Reorganization and Changes in Management***

8.      In 2019, WestRock underwent a plant-wide reorganization, and Plaintiff was assigned to the Graphics Division under manager Mark van der Kloet. (Second Amended Complaint, ECF No. 40, ¶ 23.)

**Undisputed.**

9.      The reorganization was a result of a plant closure in Newark, New Jersey ("Newark Plant"), which resulted in many people losing their jobs and a reorganization. (**Exhibit 1**, Plaintiff's Deposition, 16:18-17:13.)

**Undisputed.**

10.     At the start of his new assignment, Mark van der Kloet agreed to pay Plaintiff the same amount he had been paid the previous year until a new compensation plan could be resolved. (Second Amended Complaint, ECF No. 40, ¶ 24; document Bates-stamped WESTROCK 0254, attached as **Exhibit 2** to Janice Sued Agresti Declaration.)

**Undisputed.**

11.     This temporary agreement was in place until Plaintiff could be moved to a new compensation plan. (Nickie Parker's Deposition, attached as **Exhibit 3** to Janice Sued Agresti Declaration, 29:4-24.)

**Disputed.**

12.     In 2022, Nickie Parker assumed responsibility for the graphics business because Mark van der Kloet was retiring. (**Exhibit 3**, Nickie Parker's Deposition, 29:4-24.)

**Disputed.**

13.     Nickie Parker and Mark van der Kloet had a two to three week overlap, during which time, he was able to pass along his "open items" to Nickie Parker as he was leaving, which included assigning Plaintiff a new compensation plan.  (**Exhibit 3**, Nickie Parker's Deposition, 29:4-24.)

**Disputed.**

14.     Mark van der Kloet told Nickie Parker that he had told Plaintiff he would keep his compensation the same for a year, and then he would be moving Plaintiff to the graphics business manager compensation plan. Mark van der Kloet advised Nickie Parker that he had not yet made that change-over, but that Plaintiff was aware that a change was going to be made.  (**Exhibit 3**, Nickie Parker's Deposition, 29:4-24.)

**Disputed.**

15.    Nickie Parker knew she needed to make that change, and she was going to move Plaintiff into David Steel's group so that all sellers were part of one team. On October 1, 2022 (which was the start of the company's new fiscal year), the company moved Plaintiff into David Steel's team and aligned Plaintiff's compensation consistent with the rest of the graphics business managers. (**Exhibit 3**, Nickie Parker's Deposition, 29:4-24.)

**Disputed.**

16.    Nickie Parker thought it was important to move Plaintiff to David Steel's team to drive a consistent experience for WestRock's customers. Having just one person report separately does not do very much to drive that consistency, so having everyone part of a sales team was going to be important. (**Exhibit 3**, Nickie Parker's Deposition, 34:4-20.)

**Disputed.**

___

***Plaintiff Accepts New Compensation Plan And Is No Longer Paid Any Commission***

___

17.    On September 1, 2022, David Steel informed Plaintiff that, effective October 1, 2022, Plaintiff's compensation structure was being re-aligned with his team. (Second Amended Complaint, ECF No. 40, ¶ 28.)

**Undisputed.**

18.    The change was necessary because the Graphics Division did not have commissioned salespeople. (Second Amended Complaint, ECF No. 40, ¶ 30.)

**Undisputed.**

19.    Plaintiff's compensation was re-aligned as of October 1, 2022. (**Exhibit 3**, Nickie Parker's Deposition, 29:4-24.)

**Undisputed.**

20.     When Plaintiff's compensation structure was re-aligned, he received an acknowledgment of pay rate and a payday form, which he executed, acknowledging that his new salary would be $145,000 with a maximum bonus of $58,000. (**Exhibit 1**, Plaintiff's Deposition, 31:-3-15.)

**Undisputed.**

21.     By signing these documents, Plaintiff understood that he was agreeing to a new base compensation and new bonus plan and that any prior bonus plans or compensation agreements were no longer active as a result. (**Exhibit 1**, Plaintiff's Deposition, 32:11-18 and Compensation Plan Documents, attached as **Exhibit 4** to Janice Sued Agresti's Declaration (and Exhibit 4 to Plaintiff's Deposition.))

**Undisputed.**

22.     Further, Plaintiff's new compensation agreement explicitly stated, "I have read this sales compensation plan in its entirety and acknowledge that it will be the governing documentation regarding all incentive earning for which I may be eligible in the Plan year…" (WESTROCK 0267, attached as **Exhibit 5** to Janice Sued Agresti's Declaration.)

**Undisputed.**

23.     Plaintiff agrees that a company has a right to change employees' compensation. (**Exhibit 1**, Plaintiff's Deposition, 33:24-34:1.)

**Undisputed.**

24.     Plaintiff agrees that if a new sales plan is issued, it supersedes a prior sales plan. (**Exhibit 1**, Plaintiff's Deposition, 117:22-118:5.)

**Undisputed.**

LEGAL\76167642\1

25.     There is no contract that would entitle Plaintiff to commissions or that would create a requirement to pay him a commission on Pepperidge Farm transactions. (**Exhibit 1**, Plaintiff's Deposition, 43:8-22.)

**Undisputed.**

---

### *Issues with Plaintiff's Performance Are Noticed*

---

26.     From the time that Plaintiff joined the Graphics Division, David Steel immediately noticed issues with Plaintiff's performance and began documenting them. (**Exhibit 3**, Nickie Parker's Deposition, 65:12-67:16.)

**Undisputed.**

---

### *Pepperidge Farm Begins Voicing Quality Concerns Which Plaintiff Does Not Address Appropriately*

---

27.     Plaintiff was informed in or about 2020 that a WestRock customer assigned to Plaintiff, Pepperidge Farm, was unhappy with quality. (**Exhibit 1**, Plaintiff's Deposition, 86:8-91:5.)

**Undisputed.**

28.     Plaintiff did not escalate any concerns related to quality to Nickie Parker or Tammy Siracusa. (**Exhibit 1**, Plaintiff's Deposition, 91: 2-5.)

**Undisputed.**

29.     Typically, if a graphics business manager like Plaintiff receives complaints of quality issues, they would visit the customer facility regularly to understand and see some of the issues firsthand. Plaintiff did not ever visit Pepperidge Farm's manufacturing facilities. (Tammy Siracusa Deposition, attached to Janice Sued Agresti's Declaration as **Exhibit 6**, 45:17-46:12.)

**Undisputed.**

---

### *Pepperidge Farm Pulls Its Business*

---

30.    Pepperidge Farm closed its Connecticut office during the period July through December 2023, which is where Plaintiff's dealings with the customer allegedly were. (**Exhibit 1**, Plaintiff's Deposition, 81:15-82:2.)

**Undisputed.**

31.    Plaintiff never submitted any expense reports to verify he was visiting the customer. (**Exhibit 1**, Plaintiff's Deposition, 122:21-123:2; **Exhibit 3**, Nickie Parker's Deposition, 25:8-20.)

**Undisputed.**

32.    After the closure, Plaintiff dealt with the client mostly on the phone. Further, many of the individuals Plaintiff dealt with at the customer left the company in this time frame. (**Exhibit 1**, Plaintiff's Deposition, 81:15-82:2.)

**Undisputed.**

33.    In April 2023, Plaintiff was informed by Pepperidge Farm that WestRock was losing ninety percent of its business due to quality issues. (**Exhibit 1**, Plaintiff's Deposition, 85:2-9.)

**Undisputed.**

34.    Eventually, WestRock lost all of Pepperidge Farm's business in April 2024. (**Exhibit 1**, Plaintiff's Deposition, 85:2-9.)

**Undisputed.**

***Plaintiff's Performance Issues Continue, And He Is Placed On A Performance Improvement Plan (PIP)***

35.    Plaintiff was identified as "Falling Below Expectations" on his 2023 Performance Evaluation. (**Exhibit 1**, Plaintiff's Deposition, 102:7-16.)

**Disputed.**

36.    Plaintiff failed to submit expense or business reports related to Pepperidge Farm in accordance with company policy. (**Exhibit 1**, Plaintiff's Deposition, 122:12-123:6.).

LEGAL\76167642\1

**Undisputed.**

37.     Plaintiff agreed that a graphics business manager who is not building relationships with new customers and generating new business is not fulfilling the role of a graphics business manager. (**Exhibit 1**, Plaintiff's Deposition, 131:3-7)

**Disputed.**

38.     Plaintiff did not generate new business as a graphics business manager. (**Exhibit 1**, Plaintiff's Deposition, 82:3-33.)

**Undisputed.**

39.     As part of Plaintiff's job, it was expected he would use Salesforce. (**Exhibit 1**, Plaintiff's Deposition, 77:13-15.)

**Undisputed.**

40.     Plaintiff did not use Salesforce.com, which is the company's CRM system, to track and grow opportunities. (**Exhibit 3**, Nickie Parker's Deposition, 24:19-25:20.).

**Disputed.**

41.     Further, Plaintiff did not provide any expense reports related to visiting any customer, including WestRock. (**Exhibit 3**, Nickie Parker's Deposition, 24:19-25:20.)

**Undisputed.**

42.     Plaintiff's 2023 performance evaluation was rated "inconsistent" or falling below expectations. (**Exhibit 6**, Tammy Siracusa's Deposition, 26:12-20; **Exhibit 1**, Plaintiff's Deposition, 102:7-16.)

**Undisputed.**

43.     Plaintiff's manager as of 2023, Tammy Siracusa, stated that her main concerns with Plaintiff's performance was his lack of effort to grow new business; the professionalism that he

displayed with his customer and with meetings with her; his inability to use company tools such as Outlook, e-mail, calendar; and his inability to use the computer in general and use Salesforce.com. (**Exhibit 6**, Tammy Siracusa's Deposition, 25:5-19.)

**Undisputed.**

44.    Plaintiff would come to meetings unprepared, as well as use inappropriate language when speaking with Tammy Siracusa and write unprofessional emails. (**Exhibit 6**, Tammy Siracusa's Deposition, 31:3-32:21.)

**Undisputed.**

45.    Plaintiff received training on the company tools and systems. (**Exhibit 6**, Tammy Siracusa's Deposition, 29:20-23.)

**Undisputed.**

46.    Tammy Siracusa began considering to terminate Plaintiff's employment in the summer of 2023 after she had learned of the loss of virtually all of the Pepperidge Farm account, and she had been talking to Plaintiff about growing new business and he had not shown any activity around growing new business, as well as his unprofessionalism. (**Exhibit 6**, Tammy Siracusa's Deposition, 46:21-47:14.)

**Undisputed.**

47.     Plaintiff was placed on a performance improvement plan ("PIP")  on January 16, 2024, due to his failure to sufficiently perform his role and his apparent unwillingness to improve his performance after discussion. (PIP is attached to Janice Sued Agresti's Declaration as **Exhibit 7**; **Exhibit 6**, Tammy Siracusa's Deposition, 69:8-13.)

**Undisputed.**

48.    Plaintiff acknowledged receipt of the PIP on January 17, 2024. (**Exhibit 1**, Plaintiff's Deposition, 100:20-22.)

**Undisputed.**

49.    The initial PIP was for a 60-day period, but Plaintiff was granted an extension on April 26, 2024. (**Exhibit 1**, Plaintiff's Deposition, 99:12-100:8; 101:9-11.)

**Undisputed.**

50.    Plaintiff understood that failure to meet the requirements of the PIP could result in termination of employment. (**Exhibit 1**, Plaintiff's Deposition, 111:11-15.)

**Undisputed.**

51.    Plaintiff failed to meet various requirements in his PIP and PIP extension document. (**Exhibit 1**, Plaintiff's Deposition, 111:16-113:13.)

**Undisputed.**

---

### *Plaintiff's Employment Is Terminated Due to Performance Issues*

52.    Tammy Siracusa made the decision to terminate Plaintiff's employment. (**Exhibit 1**, Plaintiff's Deposition, 113:14-114:11.)

**Undisputed.**

53.    Tammy Siracusa terminated Plaintiff's employment because he failed to complete the PIP issued to him on January 16, 2024. Despite receiving extensions of the initial 60-day PIP period, he failed to complete specific action items marked as incomplete in the PIP extension document dated April 26, 2024. (**Exhibit 1**, Plaintiff's Deposition, 114:14-115:4.)

**Undisputed.**

54.    Plaintiff's employment with WestRock was terminated on June 6, 2024, after which he has not actively sought new employment. (**Exhibit 1**, Plaintiff's Deposition, 15:14-21.)

LEGAL\76167642\1

**Undisputed.**

55.    Plaintiff's position has not been replaced. (**Exhibit 6**, Tammy Siracusa's Deposition, 24:11-16.)

**Disputed.**

---

***Plaintiff Files A Lawsuit And EEOC Charge***

---

56.    Plaintiff never raised any internal complaints of discrimination to the company. (**Exhibit 1**, Plaintiff's Deposition, 116:6-9.)

**Disputed.**

57.    On June 16, 2023, Plaintiff filed the complaint in this action in state court, which was then removed to federal court on July 20, 2023. (ECF No. 1 and ECF No. 1-1.)

**Undisputed.**

58.    On June 16, 2023, Plaintiff also filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging that WestRock discriminated against him on the basis of his age and perceived disability, and that WestRock retaliated against him. (Second Amended Complaint, ECF No. 40, ¶ 37.)

**Undisputed.**

59.    The EEOC Charge states that the dates the discrimination allegedly took place were September 1, 2022, to continuing. (Plaintiff's EEOC Charge, attached to Janice Sued Agresti's Declaration as **Exhibit 8**, p. 2.)

**Undisputed.**

60.    Although Plaintiff mentioned Peter Brandt at his deposition, Peter Brandt was not the subject of the EEOC Charge, and any allegations related to Peter Brandt predate the closure of the Newark Plant in 2019. (**Exhibit 1**, Plaintiff's Deposition, 43:25-46:3.)

LEGAL\76167642\1

**Disputed.**

*Plaintiff Concedes That Age Was Never Discussed Or A Part of Any Employment Decisions*

61.    According to Plaintiff, Plaintiff has identified Peter Brandt, David Steel, Mark van der Kloet, and Nickie Parker as the individuals who allegedly discriminated against him based on age. All of these individuals are in the same protected class as Plaintiff (age). (**Exhibit 1**, Plaintiff's Deposition, 43:17-24.)

**Undisputed.**

62.    Plaintiff agreed that at no point was age mentioned by Mark van der Kloet, David Steel, or Nickie Parker. (**Exhibit 1**, Plaintiff's Deposition, 25:14-26:17.)

**Undisputed.**

63.    Plaintiff conceded he has no specific facts to support that his change in compensation was due to age. (**Exhibit 1**, Plaintiff's Deposition, 25:14-26:17.)

**Undisputed.**

64.    Plaintiff also conceded that no one at the company has ever made a statement or done anything to suggest that Plaintiff's age was part of any decision related to his employment. (**Exhibit 1**, Plaintiff's Deposition, 27:14-18.)

**Undisputed.**

65.    Nickie Parker was unaware of Plaintiff's age because Plaintiff did not turn his camera on during virtual meetings, and they never physically met. (**Exhibit 3**, Nickie Parker's Deposition, 37:8-18.)

**Disputed.**

66.    Nickie Parker did not play a part in placing Plaintiff on a PIP or terminating his employment. (**Exhibit 3**, Nickie Parker's Deposition, 39:3-5.)

**Undisputed.**

67.    According to Plaintiff, Plaintiff's basis for identifying Nickie Parker was an alleged phone call after his compensation changed during which Nickie Parker told him, "I hope you saved enough money through the years." At his deposition, Plaintiff added that Nickie Parker allegedly told him, "If you don't like it, quit," although Plaintiff did not make this allegation in the complaint. Plaintiff had no other basis to believe Nickie Parker discriminated against him based on age. (**Exhibit 1**, Plaintiff's Deposition, 48:24-52:9.)

**Undisputed.**

68.    According to Plaintiff, Plaintiff's basis for identifying David Steel is one alleged comment at dinner in approximately 2020 wherein Steel was discussing his own retirement and asked Plaintiff when he planned to retire. (**Exhibit 1**, Plaintiff's Deposition, 53:21-54:6.)

**Disputed.**

69.    The idea that age or alleged disability had anything to do with his job transfer is purely subjective and not based in fact. (**Exhibit 1**, Plaintiff's Deposition, 39:3-40:19.)

**Disputed.**

***Plaintiff Concedes That Disability Was Never Discussed Or A Part of Any Employment Decisions***

70.    At his deposition, Plaintiff identified Peter Brandt, David Steel, Mark van der Kloet, and Nickie Parker as the individuals who discriminated against him based on perceived disability. (**Exhibit 1**, Plaintiff's Deposition, 53:15-20.)

**Undisputed.**

71.    Peter Brandt himself had a disability. (**Exhibit 1**, Plaintiff's Deposition, 118:12-23.)

**Disputed.**

72.    Plaintiff agreed that at no point was disability status ever mentioned by David Steel, Mark van der Kloet, or Nickie Parker. (**Exhibit 1**, Plaintiff's Deposition, 27:5-8.)

**Disputed.**

73.    No words were ever used that would suggest that Plaintiff's alleged disability had anything to do with his change in compensation. (**Exhibit 1**, Plaintiff's Deposition, 28:24-29:4.)

**Disputed.**

74.    Plaintiff alleged that the sole basis for Plaintiff's disability claim is that Peter Brandt sent him for a drug test when he returned from cancer treatment in 2014, which he failed. (**Exhibit 1**, Plaintiff's Deposition, 35:19-37:17.)

**Undisputed.**

75.    Plaintiff's basis for including Mark van der Kloet in his alleged discrimination claims is an alleged phone call asking how he was doing after cancer treatment. No specific comments were ever made by van der Kloet related to age and there are no documents that would support any discriminatory animus based on age. According to Plaintiff, Van der Kloet is included in this group because Plaintiff felt he should be. Van der Kloet was not Plaintiff's supervisor at this time, and this phone call predated the Newark Plant closure. (**Exhibit 1**, Plaintiff's Deposition, 47:1-20; 49:19-50.)

**Undisputed.**

76.    Plaintiff did not provide any facts related to his inclusion of Peter Brandt for alleged disability discrimination other than he was sent for a drug test. (**Exhibit 1**, Plaintiff's Deposition, 35:19-37:17.)

**Undisputed.**

LEGAL\76167642\1

77.    The basis for Plaintiff to include Nickie Parker as an individual who according to Plaintiff, allegedly discriminated against him due to perceived disability, is that when he called her about his compensation change, she allegedly told him, "I hope you saved enough money." Plaintiff newly alleged at his deposition that she also said, "if you don't like it, quit." Nickie Parker has never met Plaintiff and has never seen his face. (**Exhibit 1**, Plaintiff's Deposition, 54:13-55:4.)

**Undisputed.**

78.    Plaintiff had no basis to believe that Nickie Parker made any decisions related to his cancer diagnosis in 2014 other than Plaintiff's belief that "everybody talks to everybody." (**Exhibit 1**, Plaintiff's Deposition, 56:2-7.)

**<span style="color:red">Disputed.</span>**

79.    According to Plaintiff, the basis for Plaintiff to include Mark van der Kloet as an individual who allegedly discriminated against him due to perceived disability is Plaintiff's own belief that van der Kloet knew he was sick and that he believed the company wanted to secure his accounts before he died and limit his interactions with the customer. However, this is based on Plaintiff's own beliefs, and no one ever said anything to that effect. (**Exhibit 1**, Plaintiff's Deposition, 56:16-58:15.)

**Undisputed.**

80.    According to Plaintiff, the basis for Plaintiff to include David Steel as an individual who allegedly discriminated against him due to perceived disability is his "attitude" and Plaintiff's belief that he knew about his cancer diagnosis from 2014. Plaintiff could not provide any specific words or examples of Steel's allegedly discriminatory behavior. (**Exhibit 1**, Plaintiff's Deposition, 58:25-61:24.)

**Undisputed.**

81.    Tammy Siracusa and Nickie Parker were not aware that Plaintiff had pancreatic cancer in 2014. (**Exhibit 6**, Tammy Siracusa's Deposition, 49:25-50:3; **Exhibit 3**, Nickie Parker's Deposition, 27:12-15.)

**Undisputed.**

82.    The idea that age or alleged disability had anything to do with Plaintiff's job transfer is purely subjective and is not based in fact. (**Exhibit 1**, Plaintiff's Deposition, 39:3-40:19.)

**Disputed.**

---

***Plaintiff Has No Basis To Believe He Was Retaliated Against***

---

83.    According to Plaintiff, the alleged basis for Plaintiff's retaliation claim is that when he returned from cancer treatment in 2014 or 2015, he was sent for a random drug test by Peter Brandt. (**Exhibit 1,** Plaintiff's Deposition, 119:6-18.)

**Undisputed.**

84.    According to Plaintiff, Plaintiff believes he was retaliated against for being sick in 2014 and 2015 when he was placed in the graphics division and his compensation structure changed in 2019 and thereafter. (**Exhibit 1**, Plaintiff's Deposition, 120:1-121:8.)

**Undisputed.**

85.    Throughout his tenure, Plaintiff was employed at-will. (Exhibit 1, Plaintiff's Deposition, 14:15-22.)

LEGAL\76167642\1

## JOINT RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS[2]

---

*Plaintiff's Employment Background*

---

1.      Plaintiff has worked as a salesperson in the packaging industry since about 1979. (Second Amended Complaint, ECF No. 40, ¶ 15.)

**Undisputed.**

2.      In 2000, he joined Schiffenhaus Packaging, which later became part of WestRock ("WestRock"). (Second Amended Complaint, ECF No. 40, ¶ 15.)

**Undisputed.**

3.      Throughout his tenure, Plaintiff was employed at-will. (Plaintiff's Deposition, attached to the Janice Sued Agresti's Declaration as **Exhibit 1**, 14:15-22.)

**Undisputed.**

---

*Plaintiff's Compensation Structure Prior to Reorganization*

---

4.      As a salesperson prior to a reorganization in 2019, Plaintiff's income was solely commission-based. (Second Amended Complaint, ECF No. 40, ¶ 17.)

**Undisputed.**

---

*Plaintiff's Health Issues About a Decade Ago*

---

5.      According to Plaintiff, in 2014, Plaintiff was diagnosed with Stage IV pancreatic cancer. (Second Amended Complaint, ECF No. 40, ¶ 17.)

**Undisputed.**

6.      According to Plaintiff, Plaintiff underwent cancer treatments and took a leave of absence in 2015 to recover from his treatments. (Second Amended Complaint, ECF No. 40, ¶ 17.)

**Undisputed.**

---

[2] Note: In this document, some paragraphs skip numbers. This is because the paragraphs are uniform throughout all three 56.1 Statements (and the numbering conventions match).

7.    Plaintiff believes that his accounts were not serviced in 2014 due to his cancer diagnosis.

(**Exhibit 1**, Plaintiff's Deposition, 27:19-28:19.)

**Undisputed.**

---

### *Company Reorganization and Changes in Management*

---

8.    In 2019, WestRock underwent a plant-wide reorganization, and Plaintiff was assigned to the Graphics Division under manager Mark van der Kloet. (Second Amended Complaint, ECF No. 40, ¶ 23.)

**Undisputed.**

9.    The reorganization was a result of a plant closure in Newark, New Jersey ("Newark Plant"), which resulted in many people losing their jobs and a reorganization. (**Exhibit 1**, Plaintiff's Deposition, 16:18-17:13.)

**Undisputed.**

10.    At the start of his new assignment, Mark van der Kloet agreed to pay Plaintiff the same amount he had been paid the previous year until a new compensation plan could be resolved. (Second Amended Complaint, ECF No. 40, ¶ 24; document Bates-stamped WESTROCK 0254, attached as **Exhibit 2** to Janice Sued Agresti Declaration.)

**Undisputed.**

---

### *Plaintiff Accepts New Compensation Plan And Is No Longer Paid Any Commission*

---

17.    On September 1, 2022, David Steel informed Plaintiff that, effective October 1, 2022, Plaintiff's compensation structure was being re-aligned with his team. (Second Amended Complaint, ECF No. 40, ¶ 28.)

**Undisputed.**

LEGAL\76167642\1

18.     The change was necessary because the Graphics Division did not have commissioned salespeople. (Second Amended Complaint, ECF No. 40, ¶ 30.)

**Undisputed.**

19.     Plaintiff's compensation was re-aligned as of October 1, 2022. (**Exhibit 3**, Nickie Parker's Deposition, 29:4-24.)

**Undisputed.**

20.     When Plaintiff's compensation structure was re-aligned, he received an acknowledgment of pay rate and a payday form, which he executed, acknowledging that his new salary would be $145,000 with a maximum bonus of $58,000. (**Exhibit 1**, Plaintiff's Deposition, 31:-3-15.)

**Undisputed.**

21.     By signing these documents, Plaintiff understood that he was agreeing to a new base compensation and new bonus plan and that any prior bonus plans or compensation agreements were no longer active as a result. (**Exhibit 1**, Plaintiff's Deposition, 32:11-18 and Compensation Plan Documents, attached as **Exhibit 4** to Janice Sued Agresti's Declaration (and Exhibit 4 to Plaintiff's Deposition.))

**Undisputed.**

22.     Further, Plaintiff's new compensation agreement explicitly stated, "I have read this sales compensation plan in its entirety and acknowledge that it will be the governing documentation regarding all incentive earning for which I may be eligible in the Plan year…" (WESTROCK 0267, attached as **Exhibit 5** to Janice Sued Agresti's Declaration.)

**Undisputed.**

23.     Plaintiff agrees that a company has a right to change employees' compensation. (**Exhibit 1**, Plaintiff's Deposition, 33:24-34:1.)

LEGAL\76167642\1

**Undisputed.**

24.    Plaintiff agrees that if a new sales plan is issued, it supersedes a prior sales plan. (**Exhibit 1**, Plaintiff's Deposition, 117:22-118:5.)

**Undisputed.**

25.    There is no contract that would entitle Plaintiff to commissions or that would create a requirement to pay him a commission on Pepperidge Farm transactions. (**Exhibit 1**, Plaintiff's Deposition, 43:8-22.)

**Undisputed.**

---

### *Issues with Plaintiff's Performance Are Noticed*

---

26.    From the time that Plaintiff joined the Graphics Division, David Steel immediately noticed issues with Plaintiff's performance and began documenting them. (**Exhibit 3**, Nickie Parker's Deposition, 65:12-67:16.)

**Undisputed.**

---

### *Pepperidge Farm Begins Voicing Quality Concerns Which Plaintiff Does Not Address Appropriately*

---

27.    Plaintiff was informed in or about 2020 that a WestRock customer assigned to Plaintiff, Pepperidge Farm, was unhappy with quality. (**Exhibit 1**, Plaintiff's Deposition, 86:8-91:5.)

**Undisputed.**

28.    Plaintiff did not escalate any concerns related to quality to Nickie Parker or Tammy Siracusa. (**Exhibit 1**, Plaintiff's Deposition, 91: 2-5.)

**Undisputed.**

29.    Typically, if a graphics business manager like Plaintiff receives complaints of quality issues, they would visit the customer facility regularly to understand and see some of the issues

firsthand. Plaintiff did not ever visit Pepperidge Farm's manufacturing facilities. (Tammy Siracusa

Deposition, attached to Janice Sued Agresti's Declaration as **Exhibit 6**, 45:17-46:12.)

**Undisputed.**

---

***Pepperidge Farm Pulls Its Business***

---

30.     Pepperidge Farm closed its Connecticut office during the period July through December

2023, which is where Plaintiff's dealings with the customer allegedly were. (**Exhibit 1**, Plaintiff's

Deposition, 81:15-82:2.)

**Undisputed.**

**31.**     Plaintiff never submitted any expense reports to verify he was visiting the customer.

(**Exhibit 1**, Plaintiff's Deposition, 122:21-123:2; **Exhibit 3**, Nickie Parker's Deposition, 25:8-20.)

**Undisputed.**

32.     After the closure, Plaintiff dealt with the client mostly on the phone. Further, many of the

individuals Plaintiff dealt with at the customer left the company in this time frame. (**Exhibit 1**,

Plaintiff's Deposition, 81:15-82:2.)

**Undisputed.**

33.     In April 2023, Plaintiff was informed by Pepperidge Farm that WestRock was losing ninety

percent of its business due to quality issues. (**Exhibit 1**, Plaintiff's Deposition, 85:2-9.)

**Undisputed.**

34.     Eventually, WestRock lost all of Pepperidge Farm's business in April 2024. (**Exhibit 1**,

Plaintiff's Deposition, 85:2-9.)

**Undisputed.**

---

***Plaintiff's Performance Issues Continue, And He Is Placed On A Performance Improvement
Plan (PIP)***

---

36.     Plaintiff failed to submit expense or business reports related to Pepperidge Farm in accordance with company policy. (**Exhibit 1**, Plaintiff's Deposition, 122:12-123:6.).

**Undisputed.**

38.     Plaintiff did not generate new business as a graphics business manager. (**Exhibit 1**, Plaintiff's Deposition, 82:3-33.)

**Undisputed.**

39.     As part of Plaintiff's job, it was expected he would use Salesforce. (**Exhibit 1**, Plaintiff's Deposition, 77:13-15.)

**Undisputed.**

41.     Further, Plaintiff did not provide any expense reports related to visiting any customer, including WestRock. (**Exhibit 3**, Nickie Parker's Deposition, 24:19-25:20.)

**Undisputed.**

42.     Plaintiff's 2023 performance evaluation was rated "inconsistent" or falling below expectations. (**Exhibit 6**, Tammy Siracusa's Deposition, 26:12-20; **Exhibit 1**, Plaintiff's Deposition, 102:7-16.)

**Undisputed.**

43.     Plaintiff's manager as of 2023, Tammy Siracusa, stated that her main concerns with Plaintiff's performance was his lack of effort to grow new business; the professionalism that he displayed with his customer and with meetings with her; his inability to use company tools such as Outlook, e-mail, calendar; and his inability to use the computer in general and use Salesforce.com. (**Exhibit 6**, Tammy Siracusa's Deposition, 25:5-19.)

**Undisputed.**

LEGAL\76167642\1

44.     Plaintiff would come to meetings unprepared, as well as use inappropriate language when speaking with Tammy Siracusa and write unprofessional emails. (**Exhibit 6**, Tammy Siracusa's Deposition, 31:3-32:21.)

**Undisputed.**

45.     Plaintiff received training on the company tools and systems. (**Exhibit 6**, Tammy Siracusa's Deposition, 29:20-23.)

**Undisputed.**

46.     Tammy Siracusa began considering to terminate Plaintiff's employment in the summer of 2023 after she had learned of the loss of virtually all of the Pepperidge Farm account, and she had been talking to Plaintiff about growing new business and he had not shown any activity around growing new business, as well as his unprofessionalism. (**Exhibit 6**, Tammy Siracusa's Deposition, 46:21-47:14.)

**Undisputed.**

47.      Plaintiff was placed on a performance improvement plan ("PIP")  on January 16, 2024, due to his failure to sufficiently perform his role and his apparent unwillingness to improve his performance after discussion. (PIP is attached to Janice Sued Agresti's Declaration as **Exhibit 7**; **Exhibit 6**, Tammy Siracusa's Deposition, 69:8-13.)

**Undisputed.**

48.     Plaintiff acknowledged receipt of the PIP on January 17, 2024. (**Exhibit 1**, Plaintiff's Deposition, 100:20-22.)

**Undisputed.**

49.     The initial PIP was for a 60-day period, but Plaintiff was granted an extension on April 26, 2024. (**Exhibit 1**, Plaintiff's Deposition, 99:12-100:8; 101:9-11.)

**Undisputed.**

50.    Plaintiff understood that failure to meet the requirements of the PIP could result in termination of employment. (**Exhibit 1**, Plaintiff's Deposition, 111:11-15.)

**Undisputed.**

51.    Plaintiff failed to meet various requirements in his PIP and PIP extension document. (**Exhibit 1**, Plaintiff's Deposition, 111:16-113:13.)

**Undisputed.**

---

### *Plaintiff's Employment Is Terminated Due to Performance Issues*

---

52.    Tammy Siracusa made the decision to terminate Plaintiff's employment. (**Exhibit 1**, Plaintiff's Deposition, 113:14-114:11.)

**Undisputed.**

53.    Tammy Siracusa terminated Plaintiff's employment because he failed to complete the PIP issued to him on January 16, 2024. Despite receiving extensions of the initial 60-day PIP period, he failed to complete specific action items marked as incomplete in the PIP extension document dated April 26, 2024. (**Exhibit 1**, Plaintiff's Deposition, 114:14-115:4.)

**Undisputed.**

54.    Plaintiff's employment with WestRock was terminated on June 6, 2024, after which he has not actively sought new employment. (**Exhibit 1**, Plaintiff's Deposition, 15:14-21.)

**Undisputed.**

---

### *Plaintiff Files A Lawsuit And EEOC Charge*

---

57.    On June 16, 2023, Plaintiff filed the complaint in this action in state court, which was then removed to federal court on July 20, 2023. (ECF No. 1 and ECF No. 1-1.)

**Undisputed.**

58.    On June 16, 2023, Plaintiff also filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging that WestRock discriminated against him on the basis of his age and perceived disability, and that WestRock retaliated against him. (Second Amended Complaint, ECF No. 40, ¶ 37.)

**Undisputed.**

59.    The EEOC Charge states that the dates the discrimination allegedly took place were September 1, 2022, to continuing. (Plaintiff's EEOC Charge, attached to Janice Sued Agresti's Declaration as **Exhibit 8**, p. 2.)

**Undisputed.**

***Plaintiff Concedes That Age Was Never Discussed Or A Part of Any Employment Decisions***

61.    According to Plaintiff, Plaintiff has identified Peter Brandt, David Steel, Mark van der Kloet, and Nickie Parker as the individuals who allegedly discriminated against him based on age. All of these individuals are in the same protected class as Plaintiff (age). (**Exhibit 1**, Plaintiff's Deposition, 43:17-24.)

**Undisputed.**

62.    Plaintiff agreed that at no point was age mentioned by Mark van der Kloet, David Steel, or Nickie Parker. (**Exhibit 1**, Plaintiff's Deposition, 25:14-26:17.)

**Undisputed.**

63.    Plaintiff conceded he has no specific facts to support that his change in compensation was due to age. (**Exhibit 1**, Plaintiff's Deposition, 25:14-26:17.)

**Undisputed.**

64.     Plaintiff also conceded that no one at the company has ever made a statement or done anything to suggest that Plaintiff's age was part of any decision related to his employment. (**Exhibit 1**, Plaintiff's Deposition, 27:14-18.)

**Undisputed.**

60.     Nickie Parker did not play a part in placing Plaintiff on a PIP or terminating his employment. (**Exhibit 3**, Nickie Parker's Deposition, 39:3-5.)

**Undisputed.**

61.     According to Plaintiff, Plaintiff's basis for identifying Nickie Parker was an alleged phone call after his compensation changed during which Nickie Parker told him, "I hope you saved enough money through the years." At his deposition, Plaintiff added that Nickie Parker allegedly told him, "If you don't like it, quit," although Plaintiff did not make this allegation in the complaint. Plaintiff had no other basis to believe Nickie Parker discriminated against him based on age. (**Exhibit 1**, Plaintiff's Deposition, 48:24-52:9.)

**Undisputed.**

***Plaintiff Concedes That Disability Was Never Discussed Or A Part of Any Employment Decisions***

64.     At his deposition, Plaintiff identified Peter Brandt, David Steel, Mark van der Kloet, and Nickie Parker as the individuals who discriminated against him based on perceived disability. (**Exhibit 1**, Plaintiff's Deposition, 53:15-20.)

**Undisputed.**

68.     Plaintiff alleged that the sole basis for Plaintiff's disability claim is that Peter Brandt sent him for a drug test when he returned from cancer treatment in 2014, which he failed. (**Exhibit 1**, Plaintiff's Deposition, 35:19-37:17.)

**Undisputed.**

LEGAL\76167642\1

69.    Plaintiff's basis for including Mark van der Kloet in his alleged discrimination claims is an alleged phone call asking how he was doing after cancer treatment. No specific comments were ever made by van der Kloet related to age and there are no documents that would support any discriminatory animus based on age. According to Plaintiff, Van der Kloet is included in this group because Plaintiff felt he should be. Van der Kloet was not Plaintiff's supervisor at this time, and this phone call predated the Newark Plant closure. (**Exhibit 1**, Plaintiff's Deposition, 47:1-20; 49:19-50.)

**Undisputed.**

70.    Plaintiff did not provide any facts related to his inclusion of Peter Brandt for alleged disability discrimination other than he was sent for a drug test. (**Exhibit 1**, Plaintiff's Deposition, 35:19-37:17.)

**Undisputed.**

71.    The basis for Plaintiff to include Nickie Parker as an individual who according to Plaintiff, allegedly discriminated against him due to perceived disability, is that when he called her about his compensation change, she allegedly told him, "I hope you saved enough money." Plaintiff newly alleged at his deposition that she also said, "if you don't like it, quit." Nickie Parker has never met Plaintiff and has never seen his face. (**Exhibit 1**, Plaintiff's Deposition, 54:13-55:4.)

**Undisputed.**

73.    According to Plaintiff, the basis for Plaintiff to include Mark van der Kloet as an individual who allegedly discriminated against him due to perceived disability is Plaintiff's own belief that van der Kloet knew he was sick and that he believed the company wanted to secure his accounts before he died and limit his interactions with the customer. However, this is based on Plaintiff's

own beliefs, and no one ever said anything to that effect. (**Exhibit 1**, Plaintiff's Deposition, 56:16-58:15.)

**Undisputed.**

74.    According to Plaintiff, the basis for Plaintiff to include David Steel as an individual who allegedly discriminated against him due to perceived disability is his "attitude" and Plaintiff's belief that he knew about his cancer diagnosis from 2014. Plaintiff could not provide any specific words or examples of Steel's allegedly discriminatory behavior. (**Exhibit 1**, Plaintiff's Deposition, 58:25-61:24.)

**Undisputed.**

75.    Tammy Siracusa and Nickie Parker were not aware that Plaintiff had pancreatic cancer in 2014. (**Exhibit 6**, Tammy Siracusa's Deposition, 49:25-50:3; **Exhibit 3**, Nickie Parker's Deposition, 27:12-15.)

**Undispted.**

### Plaintiff Has No Basis To Believe He Was Retaliated Against

77.    According to Plaintiff, the alleged basis for Plaintiff's retaliation claim is that when he returned from cancer treatment in 2014 or 2015, he was sent for a random drug test by Peter Brandt. (**Exhibit 1,** Plaintiff's Deposition, 119:6-18.)

**Undisputed.**

78.    According to Plaintiff, Plaintiff believes he was retaliated against for being sick in 2014 and 2015 when he was placed in the graphics division and his compensation structure changed in 2019 and thereafter. (**Exhibit 1**, Plaintiff's Deposition, 120:1-121:8.)

**Undisputed.**

LEGAL\76167642\1

## STATEMENT OF ADDITIONAL FACTS NOT CONTAINED IN THE JOINT STATEMENT OF UNDISPUTED FACTS

---

*Plaintiff's Employment Background*

---

11.     This temporary agreement was in place until Plaintiff could be moved to a new compensation plan. (Nickie Parker's Deposition, attached as **Exhibit 3** to Janice Sued Agresti Declaration, 29:4-24.)

**Disputed.**

12.     In 2022, Nickie Parker assumed responsibility for the graphics business because Mark van der Kloet was retiring. (**Exhibit 3**, Nickie Parker's Deposition, 29:4-24.)

**Disputed.**

13.     Nickie Parker and Mark van der Kloet had a two to three week overlap, during which time, he was able to pass along his "open items" to Nickie Parker as he was leaving, which included assigning Plaintiff a new compensation plan.  (**Exhibit 3**, Nickie Parker's Deposition, 29:4-24.)

**Disputed.**

14.     Mark van der Kloet told Nickie Parker that he had told Plaintiff he would keep his compensation the same for a year, and then he would be moving Plaintiff to the graphics business manager compensation plan. Mark van der Kloet advised Nickie Parker that he had not yet made that change-over, but that Plaintiff was aware that a change was going to be made.  (**Exhibit 3**, Nickie Parker's Deposition, 29:4-24.)

**Disputed.**

15.     Nickie Parker knew she needed to make that change, and she was going to move Plaintiff into David Steel's group so that all sellers were part of one team. On October 1, 2022 (which was the start of the company's new fiscal year), the company moved Plaintiff into David Steel's team

and aligned Plaintiff's compensation consistent with the rest of the graphics business managers. (**Exhibit 3**, Nickie Parker's Deposition, 29:4-24.)

**Disputed.**

16.    Nickie Parker thought it was important to move Plaintiff to David Steel's team to drive a consistent experience for WestRock's customers. Having just one person report separately does not do very much to drive that consistency, so having everyone part of a sales team was going to be important. (**Exhibit 3**, Nickie Parker's Deposition, 34:4-20.)

**Disputed.**

*Plaintiff's Performance Issues Continue, And He Is Placed On A Performance Improvement Plan (PIP)*

35.    Plaintiff was identified as "Falling Below Expectations" on his 2023 Performance Evaluation. (**Exhibit 1**, Plaintiff's Deposition, 102:7-16; 2023.)

**Disputed.**

37.    Plaintiff agreed that a graphics business manager who is not building relationships with new customers and generating new business is not fulfilling the role of a graphics business manager. (**Exhibit 1**, Plaintiff's Deposition, 131:3-7)

**Disputed.**

40.    Plaintiff did not use Salesforce.com, which is the company's CRM system, to track and grow opportunities. (**Exhibit 3**, Nickie Parker's Deposition, 24:19-25:20.)

**Disputed.**

55.    Plaintiff's position has not been replaced. (**Exhibit 6**, Tammy Siracusa's Deposition, 24:11-16.)

**Disputed.**

*Plaintiff Files A Lawsuit And EEOC Charge*

LEGAL\76167642\1

56.    Plaintiff never raised any internal complaints of discrimination to the company. (**Exhibit 1**, Plaintiff's Deposition, 116:6-9.)

**Disputed.**

60.    Although Plaintiff mentioned Peter Brandt at his deposition, Peter Brandt was not the subject of the EEOC Charge, and any allegations related to Peter Brandt predate the closure of the Newark Plant in 2019. (**Exhibit 1**, Plaintiff's Deposition, 43:25-46:3.)

**Disputed.**

*Plaintiff Concedes That Age Was Never Discussed Or A Part of Any Employment Decisions*

65.    Nickie Parker was unaware of Plaintiff's age because Plaintiff did not turn his camera on during virtual meetings, and they never physically met. (**Exhibit 3**, Nickie Parker's Deposition, 37:8-18.)

**Disputed.**

68.    According to Plaintiff, Plaintiff's basis for identifying David Steel is one alleged comment at dinner in approximately 2020 wherein Steel was discussing his own retirement and asked Plaintiff when he planned to retire. (**Exhibit 1**, Plaintiff's Deposition, 53:21-54:6.)

**Disputed.**

69.    The idea that age or alleged disability had anything to do with his job transfer is purely subjective and not based in fact. (**Exhibit 1**, Plaintiff's Deposition, 39:3-40:19.)

**Disputed.**

*Plaintiff Concedes That Disability Was Never Discussed Or A Part of Any Employment Decisions*

71.    Peter Brandt himself had a disability. (**Exhibit 1**, Plaintiff's Deposition, 118:12-23.)

**Disputed.**

72.    Plaintiff agreed that at no point was disability status ever mentioned by David Steel, Mark

van der Kloet, or Nickie Parker. (**Exhibit 1**, Plaintiff's Deposition, 27:5-8.)

**Disputed.**

73.    No words were ever used that would suggest that Plaintiff's alleged disability had anything

to do with his change in compensation. (**Exhibit 1**, Plaintiff's Deposition, 28:24-29:4.)

**Disputed.**

78.    Plaintiff had no basis to believe that Nickie Parker made any decisions related to his cancer

diagnosis in 2014 other than Plaintiff's belief that "everybody talks to everybody." (**Exhibit 1**,

Plaintiff's Deposition, 56:2-7.)

**Disputed.**

82.    The idea that age or alleged disability had anything to do with Plaintiff's job transfer is

purely subjective and is not based in fact. (**Exhibit 1**, Plaintiff's Deposition, 39:3-40:19.)

**Disputed.**

---

*Miscellaneous*

---

86.    Throughout his tenure, Plaintiff was employed at-will. (Exhibit 1, Plaintiff's Deposition,

14:15-22.)

LEGAL\76167642\1