USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ______
DATE FILED: 9/9/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARSHALL KRIMSKY,

Plaintiff,

-against-

WESTROCK COMPANY and WESTROCK SERVICES, LLC,

Defendants.

23-CV-06252 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

This is an employment discrimination and New York Labor Law ("NYLL") lawsuit. Plaintiff is Marshall Krimsky. Defendants are his former employers WestRock Company and WestRock Services, LLC (together, "WestRock"). Plaintiff broadly contends WestRock discriminated and retaliated against him based on his age and his perceived disability in violation of the Americans with Disabilities Act ("ADA"), Age Discrimination in Employment Act ("ADEA"), New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL"). He also alleges WestRock violated New York Labor Law ("NYLL") § 191(c) by failing to pay him a commission he contends he was owed. Before the Court is Defendants' motion for summary judgment on all claims. Dkt. No. 46. For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

### I. RELEVANT FACTS.[1]

#### A. Plaintiff's General Employment History

Plaintiff worked as a salesperson in the packaging industry since 1979 and began working at WestRock in 2000. Dkt. No. 46-2 ("R. 56.1") ¶ 1. From 2000 to 2019, Plaintiff's income derived from sales commissions, which in some years averaged around $500,000. *Id.* ¶¶ 2, 4. Throughout his time at WestRock, Plaintiff was an at-will employee. *Id.* ¶ 3.

#### B. Plaintiff's Cancer Diagnosis

In 2014, Plaintiff was diagnosed with pancreatic cancer. Dkt. No. 51 ¶ 5. He took medical leave in 2015 for chemotherapy treatment before returning to work at WestRock. *Id.* ¶ 6. At some point in 2015 or 2016, a WestRock employee named Peter Brandt asked Plaintiff to undergo a drug test, which Plaintiff "failed" due to medication related to his cancer treatment. *Id.* ¶ 74.

#### C. The 2019 WestRock Reorganization and Plaintiff's Pay Arrangements Thereafter

In 2019, WestRock underwent a "plant-wide reorganization" following the closure of a plant in Newark, New Jersey (the "Newark Plant"). R. 56.1 ¶¶ 8–9. Although hundreds lost their jobs during this closure and reorganization, WestRock did not terminate Plaintiff's employment and instead transferred him to the "Graphics Department" under a manager named Mark van der Kloet. *Id.* Unlike Plaintiff's previous assignment, the Graphics Department did not have salespeople compensated on commission. *Id.* ¶ 18. The parties agree that van der Kloet

[1] The following facts are taken from the Consolidated 56.1 Statement Defendants submitted, which includes both disputed and undisputed facts (Dkt. No. 46-2), or the Response to Defendants' Rule 56.1 Statement Plaintiff submitted (Dkt. No. 51) where necessary, and where the facts are undisputed or not materially disputed with evidence from the record. The Court refers to Defendants' memorandum of law in support of the motion for summary judgment (Dkt. No. 46-1) as "Mot."

told Plaintiff his compensation would remain fixed for a year at the amount Plaintiff earned the previous year, until a new compensation plan could be resolved. *Id.* ¶ 10. The parties disagree, however, about the reason for this decision and about what was to happen after that first year. *See, e.g.*, Dkt. No. 40 ("SAC") ¶ 24. The record is also unclear as to whether WestRock at some point resumed paying Plaintiff a variable commission-based amount or simply kept paying him the same fixed rate for the next several years.

Van der Kloet left WestRock in 2022. R. 56.1 ¶ 12. An individual named Nickie Parker replaced him. *Id.* ¶¶ 12–13. WestRock contends that—in the few weeks where van der Kloet and Parker overlapped—van der Kloet passed along "open items" including the need to give Plaintiff a new compensation plan. *Id.* ¶¶ 13–14. Plaintiff, again, contests this account. He alleges van der Kloet would tell him every few months that they were going to discuss Plaintiff's commission arrangement and that van der Kloet promised to "make [Plaintiff] whole." Dkt. No. 51 ¶ 13.

After Parker took over the graphics business from van der Kloet, she moved Plaintiff into a group managed by an individual named David Steel so that all salespeople would be part of one team. R. 56.1 ¶ 15. Parker testified the move was important so that WestRock's customers would have a "consistent experience" regardless of their salesperson. *Id.* ¶ 16; Dkt. No. 46-7 ("Parker Dep.") 34:4–20. On September 1, 2022, Steel informed Plaintiff that, effective October 1, 2022, his compensation structure would change to make it consistent with the rest of the team, because the Graphics Department did not have commissioned salespeople. R. 56.1 ¶¶ 17–18. On September 12, 2022, Plaintiff emailed Steel expressing his frustration with this change, stating that it was unfair for his compensation structure to be drastically altered. Dkt. No. 46-6. Plaintiff alleges that he also spoke with Parker about the compensation change, and that she

responded that Plaintiff could quit if he did not like the change and also stated: "I hope you saved enough money." R. 56.1 ¶ 77. Parker testified at her deposition that she had never met Plaintiff or even seen his face. *Id.*

On October 1, 2022, Plaintiff received and executed a compensation agreement acknowledging his new salary would be $145,000 with a maximum bonus of $58,000. *Id.* ¶ 20. The compensation agreement provided: "I have read this sales compensation plan in its entirety and acknowledge that it will be the governing documentation regarding all incentive earning for which I may be eligible in the Plan year." *Id.* ¶ 22. Plaintiff understood that the compensation agreement superseded any prior salary, bonus, or incentive pay arrangements. *Id.* ¶ 21.

**D. The Pepperidge Farm Account**

One of Plaintiff's largest clients was Pepperidge Farm. In 2020, Plaintiff received word that Pepperidge Farm was dissatisfied with WestRock's quality. *Id.* ¶ 27. He did not inform Nickie Parker or Tammie Siracusa (Steel's replacement as Plaintiff's manager) about Pepperidge Farm's quality concerns, *id.* ¶ 28, nor did he visit Pepperidge Farm's manufacturing facilities to see the issues firsthand, *id.* ¶ 29.

Nevertheless, Plaintiff alleges that he worked for two years to secure a highly lucrative contract with Pepperidge Farm worth roughly $16.5 million. Dkt. No. 51 ¶ 13. He alleges that Pepperidge Farm signed the contract in August 2022, but elsewhere contends he "secured" the contract in mid-September 2022. *Compare* SAC ¶ 22, *with* Dkt. No. 51 ¶ 13 (alleging he secured the contract two weeks before his compensation changed on October 1, 2022).

An ongoing point of disagreement between Plaintiff and WestRock was Plaintiff's contention that he should receive a commission based on the 2022 Pepperidge Farm contract. The record is unclear whether Plaintiff was receiving commissions as of August 2022 or whether he continued to be paid a flat salary set at his commissions level from 2018. Similarly, as noted

above, Plaintiff and WestRock disagree about whether van der Kloet had promised Plaintiff that he would eventually be "trued up" or "made whole" for commissions he was due between 2019 and 2022.

In 2023, Pepperidge Farm informed Plaintiff it was pulling 90% of its business with WestRock due to quality issues. R. 56.1 ¶ 33. WestRock lost all of Pepperidge Farm's business in April 2024. *Id.* ¶ 34. Although the parties agree that Plaintiff failed to visit Pepperidge Farm's manufacturing facilities, as would be standard after an employee received complaints of quality issues, *id.* ¶ 29, Plaintiff contends he did visit Pepperidge Farm's headquarters many times in 2019 and again in 2022. Dkt. No. 51 ¶ 94. In general, Plaintiff also contends that after his transfer to the Graphics Department, WestRock made it difficult for him to address any customer concerns, by restricting who he could talk to. *Id.* ¶ 100.

**E. Plaintiff's Performance Issues**

Plaintiff had numerous job performance issues. In 2022, Plaintiff's new manager David Steel immediately noticed issues with Plaintiff's performance and began documenting them. R. 56.1 ¶ 26. In October 2022, Steel emailed two other WestRock employees stating the team wanted Plaintiff to conduct "some training on the order process for preprint in specialty packaging." Dkt. No. 46-8. Steel also expressed surprise at Plaintiff's lack of familiarity with certain technologies. *Id.* Steel sent a follow up email a few hours later, copying Parker, explaining he had a call with Plaintiff to set expectations and expressing some consternation at Plaintiff's unfamiliarity with certain systems. *Id.* Steel explained he was arranging for Plaintiff to receive some training in Jacksonville, Florida, and then noted: "[Plaintiff's] attitude is toxic at this point, and if it doesn't improve, we will need to develop a plan to deal with his behavior." *Id.* Parker replied a day later: "My guidance is to be as specific as possible when documenting

behavior. You need to document dates and situations. You also need to document when you set expectations for reporting, meetings, training, etc." *Id.*

As a graphics manager, Plaintiff was expected to build relationships with new customers and generate new business. R. 56.1 ¶ 37. Plaintiff did not do so. *Id.* ¶ 38. Plaintiff was also expected to utilize WestRock's CRM system, Salesforce.com, to track and grow sales opportunities. *Id.* ¶ 40. The parties dispute whether Plaintiff did in fact utilize Salesforce.com, but they do not dispute that Plaintiff did not submit expense reports related to visiting any customers. *Id.* ¶¶ 40–41.

As of early 2023, Tammie Siracusa had replaced Steel as Plaintiff's manager. *Id.* ¶¶ 43, 46. Siracusa also noted numerous issues with Plaintiff's performance. She testified that "her main concerns with Plaintiff's performance was his lack of effort to grow new business; the unprofessionalism that he displayed with his customer and with meetings with her; his inability to use company tools such as Outlook, e-mail, [and] calendar; and his inability to use the computer in general and use Salesforce.com." *Id.* ¶ 43. This inability persisted despite Plaintiff having received training on these company tools and systems. *Id.* ¶ 45. Plaintiff arrived unprepared for meetings with Siracusa, used inappropriate language when communicating with her, and wrote unprofessional emails. *Id.* ¶ 44. Siracusa testified that, in her opinion, Plaintiff showed no "willingness" or "ability" to become a successful graphics manager. Dkt. No. 46-11 ("Siracusa Dep.") 69:8–13. Siracusa began considering terminating Plaintiff's employment in summer 2023, after she learned about the loss of nearly all of the Pepperidge Farm account as well as some of the other performance issues described above. R. 56.1 ¶ 46.

**F. Plaintiff's EEOC Complaint**

Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on June 16, 2023. SAC ¶ 37; Dkt. No. 46-13. He alleged discrimination based on age and perceived disability, and retaliation. *Id.*

**G. Plaintiff's 2023 Performance Evaluation and 2024 PIP**

Siracusa gave Plaintiff a largely negative performance review for 2023, rating him "inconsistent" or falling below expectations. R. 56.1 ¶ 42; Siracusa Dep. 26:12–17. She placed Plaintiff on a Performance Improvement Plan ("PIP") on January 16, 2024, due to "his failure to sufficiently perform his role and his apparent unwillingness to improve his performance after discussion." R. 56.1 ¶ 47. The PIP was originally for a 60-day period but was later extended by Siracusa. *Id.* ¶ 49. The PIP contained numerous specific requirements and, despite the extension, Plaintiff failed to meet these requirements even though he knew that this could lead to his termination. *Id.* ¶¶ 50–51, 53. Siracusa terminated Plaintiff's employment on June 6, 2024. *Id.* ¶¶ 53–54.

## II. PROCEDURAL HISTORY

The operative complaint in this matter is Plaintiff's December 10, 2024 Second Amended Complaint. Dkt. No. 40. It includes seven causes of action: (1) discrimination in violation of the ADEA; (2) retaliation in violation of the ADEA; (3) discrimination in violation of the ADA; (4) retaliation in violation of the ADA; (5) age and disability discrimination in violation of the NYSHRL and NYCHRL; (6) retaliation in violation of the NYSHRL and NYCHRL; and (7) violations of NYLL § 191(c). *Id.* at 10–16. Following the close of fact discovery, WestRock moved for summary judgment on all counts. Dkt. No. 46.

## DISCUSSION

### I. LEGAL STANDARD ON SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure provides that a court shall grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[2] "A fact is 'material' when it 'might affect the outcome of the suit under governing law.'" *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005)). In determining whether a genuine issue of material fact exists, "[t]he evidence of the nonmovant is to be believed," and a court must draw "all justifiable inferences" in favor of the nonmovant. *Anderson*, 477 U.S. at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). A movant may point to a paucity of evidence supporting a crucial element of a non-movant's claim. Fed. R. Civ. P. 56(c)(1)(B).

Once the movant has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*,'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)), and "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in [the nonmovant's] favor." *Anderson,* 477 U.S. at 256.

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and omissions, and adopt alterations.

Reliance upon "conclusory statements" or "mere allegations" is not sufficient to defeat summary judgment. *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532–33 (2d Cir. 1993).

"Employment discrimination cases raise special issues on summary judgment." *Kenney v. N.Y.C. Dep't of Educ.*, No. 06-CV-05770 (HB), 2007 WL 3084876, at *3 (S.D.N.Y. Oct. 22, 2007). Courts must be wary about granting summary judgment in a dispute that turns principally on an employer's intent and motivation. *Id.* Nevertheless, the Second Circuit has gone "out of [its] way to remind district courts that the impression that summary judgment is unavailable to defendants in discrimination cases is unsupportable." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

## II. *MCDONNELL DOUGLAS* FRAMEWORK

In the absence of direct evidence, a court analyzes ADA, ADEA, NYSHRL, and NYCHRL claims of discrimination and retaliation under the burden-shifting *McDonnell Douglas* framework..[3] Under the *McDonnell Douglas* framework, a plaintiff has the burden of establishing a *prima facie* case of discrimination or retaliation. *Zann Kwan v. Andalex Group LLC,* 737 F.3d 834, 844 (2d Cir. 2013). If a plaintiff does so, a presumption of discrimination or retaliation arises, and the burden shifts to a defendant, who must proffer a legitimate, nondiscriminatory reason for the adverse action that a plaintiff contends is discriminatory or retaliatory. *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010). If a defendant meets that burden, the presumption of discrimination disappears, and the defendant is entitled to summary judgment "unless the plaintiff can point to evidence that reasonably supports a finding of

[3] *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009) (stating ADA claims should be analyzed under the *McDonnell Douglas* framework); *Downey v. Adloox, Inc.*, 789 F. App'x 903, 905 (2d Cir. 2019) (same for ADEA and NYSHRL claims); *Goodman v. Port Auth. of New York & New Jersey*, 850 F. Supp. 2d 363, 385 (S.D.N.Y. 2012) (same for NYCHRL claims).

prohibited discrimination" or retaliation. *Id.* This showing requires that the plaintiff "demonstrate by a preponderance of the evidence that the legitimate reason offered by the defendant is actually pretext for discrimination." *Id.* The plaintiff need not show "that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995). In other words, a plaintiff must show that the "real" reasons for an adverse employment action were at least in part discriminatory. *Id.*

## III. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE DISCRIMINATION CLAIMS

Count One of the SAC alleges age discrimination, Count Three alleges disability discrimination, and Count Five alleges age and disability discrimination, in violation of the ADA, ADEA, and NYSHRL/NYCHRL, respectively. To state a *prima facie* case of discrimination under the ADA and ADEA, Plaintiff must allege (1) he belonged to a protected class; (2) was qualified; (3) suffered an adverse action; and (4) the adverse action occurred under circumstances giving rise to an inference of discriminatory intent. *Zurich Am. Life Ins. Co. v. Nagel*, 590 F. Supp. 3d 702, 729 (S.D.N.Y. 2022); *Howard v. United Parcel Serv., Inc.*, 101 F. Supp. 3d 343, 352 (S.D.N.Y. 2015). A plaintiff must also allege that age or disability was the "but-for cause of the challenged adverse employment action" to state a claim under the ADEA and ADA, respectively. *Zurich*, 590 F. Supp. 3d at 730. Under the NYSHRL and NYCHRL, a plaintiff need only show age or disability was "a motivating factor" for the adverse action. *Id.* at 734. Accordingly, summary judgment on a NYSHRL or NYCHRL discrimination claim is appropriate only "if the record establishes as a matter of law that 'discrimination played *no* role'" in the adverse employment action. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d

102, 110 n.8 (2d Cir. 2013) (quoting *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 38, 40 n.27 (1st Dep't 2009)).

Plaintiff cannot establish a *prima facie* case of age or disability discrimination under either federal or state law. His discrimination claims posit the following adverse actions: his reassignment to the Graphics Department, WestRock withholding his commission for the 2022 Pepperidge Farm contract, his negative performance review for 2023, and the 2024 PIP. Even assuming each of these events qualified as an adverse employment action, Plaintiff cannot show that his age or disability was even a "motivating factor," let alone a "but-for cause," of any of them. Indeed, his opposition brief cites *no* evidence supporting a causal connection between his age or disability and any of the actions claimed to be adverse.

Similarly, the record is devoid of evidence that the purported adverse actions occurred under circumstances giving rise to an inference of discriminatory intent. There are, at most, two instances even tangentially supportive of Plaintiff's discrimination claims. First, in support of his disability discrimination claims, Plaintiff cites the circa 2016 incident where Brandt required Plaintiff to undergo drug screenings following his cancer treatments. Dkt. No. 51 ¶¶ 74, 83. This lone incident cannot save Plaintiff's disability discrimination claims. There is no allegation Brandt had a hand in any of the proffered adverse actions, or that he even worked at WestRock when any of those actions occurred. Moreover, the incident happened *six (6) years* before the earliest alleged adverse action in this lawsuit.

Second, in support of his age discrimination claims, Plaintiff highlights his (disputed) claim that Parker told him he could quit if he did not like the compensation changes and that she hoped he "saved enough money." R. 56.1 ¶ 77. The remark is not discriminatory on its face and this interaction in no way evinces discrimination. Discrimination law does not protect against

petty slights. *Mihalik*, 715 F.3d at 111. However insensitive, the overall context of this alleged remark also does not support any discriminatory inference, given that Parker and Plaintiff were discussing his compensation changes and his potential exit from WestRock.

As Plaintiff has not identified any evidence supporting causation or an inference of discrimination based on age or disability, he has failed to make a *prima facie* case of discrimination.

Even assuming Plaintiff could show a *prima facie* case, WestRock has provided extensive legitimate, non-discriminatory justifications for each of the claimed adverse actions. WestRock transferred Plaintiff to the Graphics Department following the closure of the Newark Plant, which prompted large-scale changes at WestRock. R. 56.1 ¶¶ 8–9. When Parker became the Department's manager, she promptly took steps to align Plaintiff's compensation structure with all other employees in the Department. *Id.* ¶¶ 17–20. Plaintiff did not receive a commission for the Pepperidge Farm contract because WestRock did not regard him as a commissioned employee..[4] *Id.* Siracusa gave Plaintiff a negative performance review because he came to work unprepared, used unprofessional language, lacked familiarity with company systems necessary to perform his job duties, and despite training and correction, showed no improvement nor any desire or willingness to improve. *Id.* ¶¶ 43–46; Siracusa Dep. 26:12–17, 31:14–21, 69:8–13. She then placed him on a PIP based on those same issues. Dkt. No. 46-12.

Accordingly, the burden shifts to Plaintiff to explain why those reasons are pretextual and why, in fact, at least some of the motivating factors are based on protected categories. He has

---

[4] Whether Plaintiff is entitled to the Pepperidge Farm commission as a matter of labor law is discussed further below. As to discriminatory intent, the undisputed evidence establishes that the relevant WestRock managers did not believe Plaintiff was entitled to any such commission because, in their view, he was not a commissioned employee at that time.

not done so. He highlights that the Newark Plant closed in 2019, but WestRock did not restructure his compensation until 2022, three years later. R. 56.1 ¶¶ 8–9, 17–20. The current record aptly explains this gap, however. WestRock immediately transferred Plaintiff to the Graphics Department following the Newark Plant closure. *Id*. The Department's then-manager, van der Kloet, expressed confusion at how to structure Plaintiff's compensation and, seemingly through inertia, took no definitive action, but when Parker took over from van der Kloet, she promptly took steps to standardize compensation across the department. *Id.* ¶¶ 15–20.

Next, challenging the performance review and PIP, Plaintiff argues WestRock transferred him to a position he was ill-suited for and lacked interest in as part of an effort to set him up to fail. SAC ¶¶ 29–33. Plaintiff cites no evidence to support this theory. Nor does this theory address the undisputed fact that Plaintiff received a negative performance review due to negative performance.

Last, Plaintiff challenges WestRock's justification for not paying him a commission on the Pepperidge Farm contract, highlighting that Pepperidge Farm signed the new contract in August 2022 and his compensation structure did not change until October 2022. SAC ¶ 22; R. 56.1 ¶ 19. The record is unclear whether Plaintiff was earning any commissions between his 2019 transfer and October 2022. The parties seem to agree that van der Kloet agreed to hold Plaintiff's earnings steady for at least a year when Plaintiff joined the Graphics Department (although Plaintiff alleges van der Kloet promised to "true up" the earnings later, and WestRock claims van der Kloet was simply preserving the salary status quo until he could figure out how to determine Plaintiff's appropriate salary). R. 56.1 ¶ 10; SAC ¶ 24. But the record does not clarify if, after that year-long period, Plaintiff resumed earning commissions or simply continued to be paid a flat salary set at the level of his last commission-earning year. Regardless, even

assuming Plaintiff began earning commissions again and that WestRock did not pay him an earned commission on the Pepperidge Farm account, Plaintiff cites no evidence that WestRock failed to pay him a commission due in any way to Plaintiff's age or perceived disability. *Cronin*, 46 F.3d at 203 (explaining that a plaintiff's burden is to show that a defendant's purported justifications were "not the only reasons *and that the prohibited factor was at least one of the motivating factors*" (emphasis added)). Indeed, the SAC alleges WestRock refused to pay the commission because WestRock wanted to save money, which is a business justification unrelated to discrimination. SAC ¶ 36.

Accordingly, summary judgment is GRANTED to Defendants on Counts One, Three, and Five.

## IV. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE RETALIATION CLAIMS

Counts Two, Four, and Six allege WestRock retaliated against Plaintiff for filing an EEOC complaint by failing to pay him the Pepperidge Farm commission, negatively reviewing his performance, and placing him on a PIP, in violation of the ADEA, ADA, and NYSHRL/NYCHRL, respectively. SAC ¶¶ 58, 72, 86. To state a claim for retaliation under the ADEA or ADA, a plaintiff must allege "(1) participation in a protected activity; (2) the defendant's knowledge of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Zann Kwan*, 737 F.3d at 844; *Fordham v. Islip Union Free Sch. Dist.*, 662 F. Supp. 2d 261, 273 (E.D.N.Y. 2009). The elements are the same under the NYSHRL and NYCHRL except instead of showing an adverse employment action, a plaintiff merely must show "that something happened that would be reasonably likely to deter a person from engaging in protected

activity." *Pouncy v. Advanced Focus LLC*, No. 15-CV-06260 (JMF), 2017 WL 4280949, at *6 (S.D.N.Y. Sept. 25, 2017), *aff'd*, 763 F. App'x 134 (2d Cir. 2019).

WestRock argues that Plaintiff cannot show a causal connection between the adverse actions and his EEOC complaint. Mot. at 19. It highlights that the only basis to infer causation is temporal proximity, but that Siracusa placed Plaintiff on a PIP seven months after his EEOC complaint. *Id.* at 20. In the alternative, WestRock argues it provided legitimate justifications for Plaintiff's negative performance review and his placement on a PIP, but Plaintiff has failed to adduce sufficient facts demonstrating that WestRock's reasons were pretextual. *Id.* In opposition, Plaintiff argues that Siracusa began considering whether to terminate Plaintiff's employment in 2023, closer in time to his EEOC complaint. Dkt. No. 49 at 12. He also argues that the PIP was part of a single scheme beginning in 2023. *Id.*

Plaintiff's retaliation claim relies on three employment actions he alleges were retaliation for his EEOC complaint: denial of the Pepperidge Farm commission, a negative performance review, and placement on a PIP. SAC ¶ 67. Plaintiff cannot succeed on any of these theories.

WestRock allegedly denied Plaintiff his Pepperidge Farm commission in August 2022, or certainly by no later than October 2022. *Id.* ¶¶ 26–28. Plaintiff filed his EEOC complaint in June 2023. *Id.* ¶ 37. Because the denial of the Pepperidge Farm commission was months prior to the filing of the EEOC complaint, Plaintiff cannot show that the alleged adverse action was in retaliation for something that had not yet occurred.

Next, even assuming Plaintiff could state a *prima facie* case of retaliation based on the negative performance evaluation or PIP, WestRock has carried its burden of demonstrating legitimate, non-discriminatory reasons for both the negative evaluation and the PIP. *See supra* Pt. (III). Plaintiff's direct manager, Siracusa, testified that Plaintiff failed to grow new business,

was unprepared, lacked familiarity with basic technology, and communicated unprofessionally and inappropriately with her and with customers. Siracusa Dep. 31:14–21, 69:8–13. Plaintiff does not dispute any of these characterizations. Dkt. No. 51 ¶¶ 43–44. Furthermore, they echo Steel's October 12, 2022 email, noting Plaintiff's unfamiliarity with necessary technologies and the problems caused by his "toxic" attitude. Dkt. No. 46-8.

Accordingly, the burden shifts to Plaintiff to explain why these reasons were pretextual. Plaintiff has failed to do so. Indeed, Plaintiff's opposition brief entirely fails to address this point. *See Jackson v. Federal Exp.*, 766 F.3d 189, 198 (2d Cir. 2014) ("[A] court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned.")..[5] Because Plaintiff has not stated a *prima facie* claim for retaliation nor shown WestRock's justifications are pretextual, summary judgment is GRANTED to Defendants on Counts Two, Four, and Six.

## V. SUMMARY JUDGMENT CANNOT BE GRANTED ON THE NYLL CLAIM

That leaves Plaintiff's NYLL claim. Plaintiff alleges WestRock failed to pay his earned commissions on a timely basis and refused to provide written statements of earnings. SAC ¶¶ 88–89. WestRock argues this claim fails because Plaintiff cannot point to a written document entitling him to receive a commission and because, as of October 1, 2022, Plaintiff was clearly not entitled to commissions. Mot. at 20–21. But no written document is required under the law, *see Pachter v. Bernard Hodes Group, Inc.*, 10 N.Y.3d 609, 618 (N.Y. 2008), and WestRock's arguments cannot support summary judgment in its favor.

---

[5] Even if the Court construed Plaintiff's pretext argument in the discrimination portion of his brief as applying to his retaliation claims, the Court would reject those arguments for the reasons described *supra* Pt. (III).

By Plaintiff's telling, van der Kloet consistently promised to pay Plaintiff commissions, once he could figure out the correct way to calculate them. SAC ¶ 24. WestRock disputes this account and maintains that Plaintiff was not entitled to commissions at any time after his transfer to the Graphics Department. R. 56.1 ¶ 25. Plaintiff's NYLL claim depends on who is right. If a jury credited Plaintiff's testimony or determined he was a commissioned employee in August 2022, it could decide that Plaintiff is entitled to at least some amount of money as a commission for the Pepperidge Farm account generally or the August 2022 contract specifically. Accordingly, whether Plaintiff was entitled to a commission as of August 2022 presents a dispute of material fact, precluding summary judgment on Count Seven..[6] Accordingly, summary judgment is DENIED as to Count Seven.

[6] Plaintiff cannot a state a NYLL claim for unpaid commission for any work performed after October 1, 2022, when his new compensation structure took effect. Nevertheless, the October 1, 2022 change would not affect whether Plaintiff was a commissioned employee as of August 2022, when Plaintiff contends he should have received a commission on the Pepperidge Farm account, or for any work performed prior to October 1, 2022.

## CONCLUSION

For all the reasons set forth above, Defendants' motion for summary judgment is GRANTED on Counts One, Two, Three, Four, Five, and Six, but DENIED on Count Seven. The parties are hereby ORDERED to meet and confer and file a joint letter by **September 29, 2026**, either seeking a referral to the assigned Magistrate Judge for a settlement conference or proposing dates for trial in the next six months.

Dated: September 9, 2026
New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge